6799

STATE OF SOUTH CAROLINA *EX REL.* J. FRASER LYON, ATTORNEY GENERAL, v. STATE DISPENSARY COMMISSION.

1. JUDGMENT—JURISDICTION—MANDAMUS—INJUNCTION.—A judgment of a court without jurisdiction of the parties or the subject matter is a nullity and must be so treated when interposed in the form of an injunction against an application for mandamus.

2. JURISDICTION—PARTIES.—THE STATE DISPENSARY COMMISSION, created by the Act of 1907, 25 Stat., 385, is the agent of the State in winding up the affairs of the State dispensary, the funds coming into its

hands therefrom is the property of the State, and the Federal Circuit Court has no jurisdiction to enjoin the commission from paying out any funds in its hands in obedience to act of the General Assembly in a suit to which the State is not a party.

3. WRIT OF MANDAMUS adjudged in this case withheld until the further order of the Court, because the Court assumes the Federal Court will not disregard its construction of State statutes.

Petition in the original jurisdiction of this Court for mandamus by J. Fraser Lyon, Attorney-General, against W. J. Murray, John McSween, C. K. Henderson, Avery Patton and B. F. Arthur, as State Dispensary Commission.

*Attorney-General J. Fraser Lyon* and. *Mr. B. L. Abney,* for petitioner.

*Mr. W. F. Stevenson,* contra.

March 14, 1908. The opinion of the Court was delivered by

MR. JUSTICE WOODS. The General Assembly, by an act approved 24th February, 1908, appropriated the sum of $15,000, to be paid by the State Dispensary Commission out of any funds in its hands into the State Treasury for the use of the Attorney-General, in the conduct of criminal prosecutions against persons charged with violations of law connected in any manner with the State Dispensary. For the enforcement of his official rights, Honorable J. Fraser Lyon, Attorney-General, filed his petition for mandamus on 2d March, 1908, in this Court against W. J. Murray, John Mc-Sween, C. K. Henderson, Avery Patton and B. F. Arthur, as the State Dispensary Commission. The petition alleges custody by the Commission of State funds sufficient to make the payment of the sum appropriated, the demand for payment by the State Treasurer, and the refusal by the Commission to comply with his demand. The petition further alleges the payment by the Commission of the sum appropriated to be a plain ministerial duty required by statute, and its prayer

is for a writ of mandamus requiring the performance of this duty. Upon this petition, the Chief Justice made an order, requiring the respondents, as the State Dispensary Commission, to show cause in this Court on 4th March, 1908, why the mandamus should not issue as prayed for.

The State Dispensary Commission in its return and answer admits the statute above recited requires of them the payment of the sum therein mentioned to the State Treasurer, and their custody of funds sufficient to meet the requirement, and the refusal to make the payment. As justification of its refusal to comply with the statute, the Commission alleges: "That they are restrained and enjoined by orders of the United States Circuit Court for this circuit from paying any funds into the hands of the State Treasurer, in two cases, to wit.: The case of the *Wilson Distilling Co.* v. *W. J. Murray and others,* a copy of their bill of complaint being hereto attached and marked 'Exhibit A,' along with the restraining order in said case, and an amended bill that has just been filed. And further, that they are restrained by an order in the case of the *Fleischmann Company* v. *W. J. Murray and others,* a copy of which bill and restraining order and oral decision, as announced, is hereto attached and marked 'Exhibit B.' "

The answer sets out that these orders of injunction were made by the Circuit Court of the United States, notwithstanding respondent's plea on the following grounds, to the jurisdiction of the Court:

1. "The funds in the hands of the 'State Dispensary Commission,' created by the Act of February 16, 1907 (Acts of 1907, p. 835), belong to and are the property of the State, which has a right to control the same, and which, through the said Commission, as its agent, is in possession thereof.

2. "The said 'State Dispensary Commission' is the mere agent or instrumentality of the State vested with the ministerial function of winding up the State's dispensary business; selling the goods and property on hand, collecting the debts due the State in connection with the said business, and hold-

ing the proceeds for the State and subject to its right of disposition thereof.   And also vested with the ministerial function of paying, with the funds held by them for said State, such of the said claims as they may, upon said investigation, find and decide to be just liabilities of the State.

3. "The pending action is in effect an action against the State, because it seeks to lay hold of the funds belonging to the State and in the hands of the said Commission as its agent, and through the said Commission in possession of the State, and further seeks to have such funds applied to the payment of alleged liabilities of the State.

4. "The State can not be held to have waived its constitutional immunity from suit by the said act creating the 'State Dispensary Commission,' except to the extent of the remedies therein provided for and allowed to claimants for the collection of such debts as may be due them by the State in connection with its dispensary business, and, therefore, such claimants are limited to the remedies therein provided for and allowed.

5. "The said act creating the 'State Dispensary Commission' having been passed and the remedies therein provided for having been allowed as a purely voluntary matter on the part of the Legislature of the State, the said act is subject to be repealed and the allowance of the remedies therein provided for is subject to be recalled at any time at the pleasure of the Legislature, and in its discretion."

The pleadings in the causes in the Federal Court will not be set out in detail.   It is sufficient to say the actions were brought by the plaintiffs therein named, claiming to be creditors for liquor sold to the State Dispensary against the respondents constituting the State Dispensary Commission; and in those actions, the Circuit Court of the United States has made orders enjoining the respondents from disposing of, except by order of that Court, the fund of $800,000, which came into their possession as the Commission appointed and organized under the statutes of the State to wind up the State Dispensary, and contemplating the adjudication by that

Court of the claims of the plaintiffs and others and the complete control of the entire fund for the satisfaction of such claims as the Court might adjudge to be just.

Replying to the return of the Commission made in this cause, the Attorney-General alleges, first: "That the petition in the case of *Wilson Distilling Company et al,* v. *State Dispensary Commission,* and the petition in the case of the *Fleischmann Company* v. *State Dispensary Commission,* together with the exhibits and orders therewith, show that the said proceedings are suits against the State of South Carolina, and that the Circuit Court of the United States is utterly without jurisdiction to, in any manner, entertain the same, or to interfere with, or to in anywise restrain the action of the said Commission;" and, second, "That the property and assets in the hands of the State Dispensary Commission arising from the assets and property of the late State Dispensary are the sole property of the State of South Carolina, and the affairs of the late State Dispensary are now being concluded and wound up under the terms of an act of the General Assembly of the State of South Carolina, approved the 16th day of February, 1907, and amended by an act approved the 24th day of February, 1908; that the Commission, in dealing with the said funds, can not be controlled, nor can the disbursement or use of said funds be directed by any court in equity or otherwise, in any suit in which the State of South Carolina is not a party, as the interests of the State would be necessarily affected directly by any decree or judgment rendered in such suit."

From this statement of the pleadings, it is evident no issue of fact arises. It is equally evident that if the Circuit Court of the United States had jurisdiction to enjoin the respondents as the State Dispensary Commission, their answer is a complete defense to the petition for mandamus, for no court would entertain for a moment an application to require parties to do that which they had been required and enjoined not to do by judicial authority. But a judgment by a court without jurisdiction of the parties

and subject-matter is a nullity and must be so treated by other courts whenever and for whatever purpose it is presented and relied on. *Elliot* v. *Piersol,* 1 Pet., 828, 7 L. Ed., 164; *Hickey's Lessee* v. *Stewart,* 44 U. S., 750, 11 L. Ed., 814; *Ex parte Bradley,* 74 U. S., 364, 19 L. Ed., 214; *Fisher* v. *Harnden,* 9 Fed. Cas., No. 4819; *Gray* v. *Larrimore,* 10 Fed. Cas., No. 5721; *Devall* v. *Taylor,* Cheves, 5; *McCall* v. *Cohen,* 13 S. C., 198; *State* v. *Penny,* 19 S. C., 218; *Canady* v. *Black,* 34 S. C., 194; *Stanley* v. *Stanley,* 35 S. C., 94, 14 S. E., 675; *Paul* v. *Railway Co.,* 50 S. C., 23, 27 S. E., 526; *Beaudrot* v. *Murphy,* 53 S. C., 118, 30 S. E., 825.

This principle applies as well to an order of injunction made by a court without jurisdiction, interposed against an application for mandamus, as to any other order or judgment. *Ellingsworth* v. *Carlson* (Neb.), 101 N. W., 1004; *State* v. *Miller* (Ohio), 39 N. E., 24; *State* v. *Graves* (Neb.), 92 N. W., 144. The exception is that a decree of the Supreme Court of the United States is binding on all the courts of the land, and the decisions of the appellate courts of each State and of the United States are binding upon the courts subordinate to them.

The consideration of the question whether that which purports to be the judgment of another court is void for lack of jurisdiction, is always to be entered on with deference by the court before which the question is made; and the opinion of a court of exalted dignity and acknowledged ability in favor of its own jurisdiction, like its opinion on other subjects, should have a strong persuasive influence in favor of the conclusion it has reached. There is no reason for anxiety or asperity on account of differences between courts of the United States and the State courts. These differences must sometimes arise under our dual system of government, but they are consistent with cordial amity between the courts and may be readily and finally settled by the Supreme Court of the United States, without hardship to the parties interested, and without sacrifice of their rights.

With the greatest respect for the learned Judge who has made the orders of injunction relied on by the respondents in this controversy, and after careful consideration of the opinion filed · in support of those orders, this Court has reached the conclusion that the Circuit Court of the United States has undertaken to assume jurisdiction of a matter in which the political rights and property interests of the State of South Carolina are vitally involved, without the consent of the State.  By those orders not only has the Court essayed to take charge of and administer the property of the State without its consent, but it has also undertaken to assume control of and wind up a distinct department of the government of a sovereign State, in disregard of the plan which the State itself had adopted and decreed by the solemn enactment of its General Assembly.   If these conclusions can be sustained by a consideration of the Constitution and statutes of the State, then it will be conceded the proceedings in the Federal Court were attempts to sue the State of South Carolina without its consent, and the matters which that tribunal has undertaken to adjudge were beyond the jurisdiction of any court; and, therefore, its orders of injunction must be regarded as nullities affording no legal protection to the respondents.

The principle that one of the States of the United States can not without its consent be sued in any court by a private citizen was thus expressed and crystallized in the Eleventh Amendment of the Constitution of the United States: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by citizens or subjects of any foreign State."   It is now generally held that exemption from such a suit is an incident of sovereignty not dependent on the constitutional provision.   *Kawananakoa* v. *Polyblank,* 205 U. S., 349, 51 L. Ed., 834.

The claims of the alleged creditors, whose rights the Federal Court undertakes to adjudicate, are for alleged debts

contracted in the operation of the State Dispensary; and the funds out of which that Court is attempting to satisfy them were derived from the assets of the State Dispensary. Therefore, in determining whether the suits in the Federal Court are for the adjudication of the State's liabilities and the disposition of the State's property, and so not cognizable by any court, it is essential to ascertain and state the relation the State Dispensary bore to the State of South Carolina.

In the year 1892, this State, by act of the General Assembly, entered upon an interesting experiment in the management of the liquor traffic by taking entire charge of the business and making it a State monopoly. State officers were designated to manage the enterprise and the funds necessary for its conduct were drawn from the State Treasury. The Board of Control, consisting of the Governor, the Comptroller-General and the Attorney-General, was clothed with the power to make rules and regulations for its management. Subject to these rules, the purchase of liquors and the distribution of them to the subordinate dispensaries was intrusted to an officer called a Commissioner. The business was made by the statute as essentially a part of the government as the management of its taxes or its public schools, and all the assets became as much the property of the State as its asylums and other public institutions, or the funds in the vaults of the treasury. The act was vigorously attacked in the courts as unconstitutional on the ground that the conduct of such a business was not within the police power of the State and was entirely without the sphere of governmental function. The constitutionality of the act is so far as it provided for the State to own all the liquor brought into the State for sale and to monopolize the sale of liquor within the State, was finally established by the judgment of this Court in *State* v. *Aiken,* 42 S. C., 222, 20 S. E., 221, 26 L. R. A., 345, and subsequently by the judgment of the Supreme Court of the United States in *Vandercook* v. *Vance,* 170 U. S., 443.

Subsequently, the following provision was incorporated into the Constitution of 1895: "The General Assembly may license persons or corporations to manufacture and sell and retail alcoholic liquors or beverages within the State under such rules and restrictions as it deems proper; or the General Assembly may prohibit the manufacture and sale and retail of alcoholic liquors and beverages within the State and may authorize and empower State, county and municipal officers, all or either, *under the authority and in the name of the State,* to buy in any market and retail within the State liquors and beverages in such packages and quantities, under such rules and regulations as it deems expedient." Under this provision of the Constitution, a new Dispensary Statute was enacted (23 Stat., 123.) changing in some particulars the details of the original Dispensary Law, but retaining in its entirety the scheme of State ownership and control. The State Dispensary and all its assets acquired under this statute are to be regarded the property of the State, and the debts contracted in its lawful management are to be regarded the debts of the State, not only by virtue of the judgments of the highest courts of the land, but also by virtue of the express declarations of the Constitution of the State. With these lights before it, this Court held, in *State v. Farnum,* 73 S. C., 165, 53 S. E., 83, that the State Dispensary was as much a part of the State government and subject to as full legislative investigation and control as the State Treasury.

It is nothing to the purpose to say the liquor trade should not have been made an integral part of the State government. The fact is, it was so made. Whether as such part of the State government it was a success or a disastrous failure, is a question for political discussion, quite apart from this controversy as to its legal status.

In the next place, it is to be observed the statutes nowhere give any legal remedy whatever to those who sold liquor to the directors of the State Dispensary and thereby became creditors of the State. Such creditors were dependent en-

tirely upon the good faith of the State to discharge its obligations.

This brings us to the pivotal question: Has the State in closing out this department of the government in the form in which it formerly existed, conferred by statute upon creditors the right to sue for the establishment and collection of these debts due from the State, and by statute set apart the public funds derived from the disposition of its Dispensary assets to be subject to seizure and final disposition under judicial order?

It seems hardly necessary to say there is no legal requirement that the State shall manage its financial affairs or any branch of them through one general fiscal agent called its Treasurer, or that its funds or any portion of them should be kept in one office called its Treasury. The State Treasurer is a constitutional officer, but his duties and powers depend entirely upon the will of the General Assembly of the State. Presumably, the State funds are in his hands, but the General Assembly may require the public funds, or any part of them, to be put in any place or with any person it sees fit; and there is no limit to its power in imposing conditions and conferring discretion on its fiscal agent as to the disbursements of these funds to its creditors. When a discretion is conferred by the State, no court can supplant the agent of the State and substitute for his discretion its own judgment. In the case of *Buchannan* v. *Alexander,* 4th Howard, 20, certain boarding-house keepers attempted to attach wages due to seamen from funds in the hands of the purser of the United States Frigate "Constitution," The Court said: "The important question is, whether the money in the hands of the purser, though due to the seamen for wages, was attachable. A purser, it would seem, can not, in this respect, be distinguished from any other disbursing agent of the government. If the creditors of these seamen, by process of attachment, divert the public money from its legitimate and appropriate object, the same thing may be done as regards the pay of our officers and men of the army

and navy; and also in every other case where the public funds may be placed in the hands of an agent for disbursement. To state such a principle is to refute it. No government can sanction it. At all times it would be found embarrassing, and under some circumstances it might be fatal to the public service.

The funds of the government are specifically appropriated to certain national objects, and if such appropriations may be diverted and defeated by State process or otherwise, the functions of the government may be suspended. So long as money remains in the hands of a disbursing officer, it is as much the money of the United States as if it had not been drawn from the treasury. Until paid over by the agent of the government to the person entitled to it, the fund can not, in any legal sense, be considered a part of his effects. The purser is not the debtor of the seamen." The same principle was involved and decided in *Oregon* v. *Hitchcock,* 202 U. S., 60, 50 L. Ed., 934; *Naganab* v. *Hitchcock,* 202 U. S., 473, 50 L. Ed., 113; *Lowry* v. *Thompson,* 25 S. C., 424, 1 S. E., 141; *Hopkins* v. *Clemson College,* 77 S. C., 12.

By the statute of 16th February, 1907 (25 Stat., 1), the State Dispensary was abolished and the County Dispensary system, for the sale of liquor under State authority, was established in its stead. On the same date, an act was passed, entitled: "An Act to provide for the disposition of all property connected with the State Dispensary and to wind up its affairs." The act provides for the appointment by the Governor of a Commission composed of five members. The powers and duties of this Commission, stated in short form, were: To close out the entire business and property of the State Dispensary, except the real estate, by selling their assets, collecting debts due and paying from the sales and collections all just liabilities at the earliest date practicable; to sell the liquors on hand to the county dispensaries, if it saw proper, but to no other person in the State; to return liquors illegally bought and to determine the legality of said "purchases" by investigating fully the circumstances

surrounding all contracts for liquor; "and to employ such assistant counsel as may be approved by the Attorney-General, and such expert accountants and stenographers and any other person or persons the Commission may deem necessary for the ascertainment of any fact or facts connected with said State Dispensary and its management or control at any time in the past, and to take testimony, either within or without the State;" to pay to the State Treasurer, after deducting expenses, " all surplus funds, after paying all liabilities;" to "submit to the Governor at the earliest day practicable, a complete inventory of all property received by them, with a statement of the liabilities of the State Dispensary, and as soon as the affairs are liquidated, a report in full of their actions and doings." By the last section of the act, it was provided "that the said Commission shall have full power and authority to investigate the past conduct of the affairs of the Dispensary, and all the power and authority conferred upon the committee appointed to investigate the affairs of the Dispensary, as prescribed by an act to provide for the investigation of the Dispensary, approved 21st of January, A. D. 1906, be, and hereby is, conferred upon the Commission provided for under this act: *Provided,* That for the purpose of investigation of the affairs of the Dispensary as herein provided, each and every member of said Commission be, and hereby is, authorized and empowered, separately and individually, or collectively, to exercise the power and authority herein conferred upon the whole Commission."

This last section is of prime importance, because the act conferred upon the Commission the same authority as was conferred on the investigating committee acting under the statute of the 24th of January, 1906; and by that statute was conferred on the committee this power: "The committee be, and they are hereby, authorized and directed to order the Commissioners of the State Dispensary to withhold the payment of any claims against the State Dispensary or any officer thereof, or the claims of any creditor against

the said State Dispensary or any of its officers, which they may deem advisable, until same is duly proved by the production of the books of original entry and all documents and correspondence relating to all their transactions with the State Dispensary, and to require the person or persons in custody or possession of said books, documents, papers and correspondence to produce the same before the said Committee in person, and when such proof has been submitted to and approved by the said Committee, and the State Treasurer is hereby forbidden to pay such claims upon written notice from the Chairman of said Committee." Comparing this statute with the previous Dispensary legislation, it is perfectly obvious this Commission had conferred on it a discretion in the ascertainment and payment of claims against the State from funds in their hands for liquor sold and accounts collected in winding up the State Dispensary at least equal to that which had been conferred on the directors of the State Dispensary when the State's liquor business was in operation. The previous Dispensary statutes clearly contemplated that the directors should buy liquor and pay just claims for its price from the proceeds of its sale. Yet we venture to think no court would have entertained for a moment a suit by creditors looking to judicial interference with the discretion of these directors in determining the just debts of the State for purchases of liquor and to the judicial administration by injunction or receivership of the funds in their hands.

There is not the slightest suggestion in this statute of consent to the submission or the justness of the claims against the State to the adjudication of any court or to the transference of those public funds to a court for administration. On the contrary, the only method provided in the statute for the separation of the just from the unjust claims was the investigation into them by the Commission itself. The language of the statute plainly contemplates the appointment of a commission of discreet business men for the pur-

pose of representing to the fullest extent the State, as its officers, in closing out its liquor business, in taking charge of its funds, in investigating the conduct of its business with a view to ascertaining and deciding for the State what were just claims and paying them from the funds realized from the business. The extent of the investigation and the degree of proof required were left to the discretion of the Commission. That this was the scope and meaning of the statute is made still more manifest when it is considered that charges of outrageous fraud, not only against the State's officers having charge of its liquor business, but also against those who had sold liquor to the State and were making claims against it, were receiving most anxious consideration by the General Assembly.

The statutes and resolutions passed by the General Assembly, which immediately preceded the act providing for the appointment of this Commission, shows the persistent purpose and well-defined public policy to use to the utmost the sovereign power of the State in the investigation of these charges and in separating just from fraudulent claims. The presumption is exceedingly strong against the legislative intention to suddenly abandon this purpose and policy and strip the State of its sovereign right to decide for itself what in justice and good faith it was called on to do in respect to the claims against it.

The statute seems plain in itself, but when viewed in the light of these conditions, we do not see how a doubt can remain that it is to be construed as providing a method of safeguarding the rights of the State, uncovering frauds against it, and providing for the ascertainment, determination and payment of the true debt of the State in the premises, by the Commission which was invested with full responsibility and discretion to the accomplishment of these ends, subject to no interference except that of the General Assembly itself. With this discretion lodged in the Commission, it became the representative of the State with respect to the matter in its charge, and a suit brought against it for any purpose

was, in effect, a suit against the State.    This principle is thus stated in *Board of Liquidation* v. *McComb,* 92 U. S., 531, 23 L. Ed., 623: "The objections to proceeding against State officers by mandamus or injunction are: First, that it is in effect proceeding against the State itself; and, secondly, that it interferes with the official discretion vested in the officers.    It is conceded that neither of these things can be done.    A State, without its consent, can not be sued by an individual; and a court can not substitute its own discretion for that of executive officers, in matters belonging to the proper jurisdiction of the latter.    But it has been well settled that when a plain official duty requiring no exercise of discretion is to be performed, and performance is refused, any person who will sustain personal injury by such refusal may have a mandamus to compel its performance; and when such duty is threatened to be violated by some positive official act, any person who will sustain personal injury thereby, for which adequate compensation can not be had at law, may have an injunction to prevent it."    After quoting this language with approval, in *Cunningham* v. *Macon, etc., R. R. Co.,* 109 U. S., 446, 27 L. Ed., 995, Justice Miller said: "It is believed that this is as far as this Court has gone in granting relief in this class of cases."    *In re Ayres,* 123 U. S., 443, 31 L. Ed., 216; *Wilson* v. *Exposition Commission* (Iowa), 110 N. W., 1045; *Davis* v. *Hortensen* (Neb.), 95 N. W., 831; *Court* v. *Hastings* (Pa.), 38 A., 717; *Chemical Company* v. *State Board of Agriculture* (N. C.), 15 S. E., 1032.

While in *Pennoyer* v. *McConnaughty,* 140 U. S., 1, 35 L. Ed., 363, it was held the Court had jurisdiction to enjoin State officers from sacrificing private rights under an unconstitutional act of a State Legislature, yet the Court recognized the rule laid down in *Board of Liquidation* v. *McComb, supra,* that a court has no jurisdiction to entertain a suit to override the discretion vested in the State officers by a valid statute.

The Supreme Court of the United States has laid down in a number of cases these propositions, in substance, namely: That a suit may be maintained; (1) to protect private rights by requiring State officers to perform a plain ministerial duty imposed by law; (2) to protect private rights against the wrong of State officers undertaking to act under statutes void because unconstitutional; and (3) to protect private rights against wrong which State officers may inflict in going beyond the duty imposed on them, or right granted to them by valid State legislation. In all of these cases the view taken by the Court is that the officer can not claim the protection of State authority because his violation of private rights is due either to his action without any authority of State law, or to his refusal to obey and recognize the State law, and, therefore, in such cases the State is not behind him. The authorities on this subject are collated in *Reagan* v. *Farmers' L. & T. Co.,* 154 U. S., 363, 38 L. Ed., 1020; in *Tindall* v. *Wesley,* 167 U. S., 204, 42 L. Ed., 137, and other cases.

Under these cases, if the State by statute places a definite sum of money or other property in the hands of an officer with the discretion to pay or deliver it to particular persons upon their doing a particular thing, lodging no discretion in the officer, the officer is a naked trustee of the money or other property, and upon the designated persons doing the particular thing required by statute, the duty of the officer to pay over the money or deliver the property is purely ministerial. In failing to discharge the trust by payment or delivery, he does not represent the State, and can claim no protection through it. On the contrary, in such failure he acts in defiance of the State authority, and compliance with the State's mandate may always be enforced by judicial process. Such cases were *McGee* v. *Lamar,* 159 U. S., 313, 40 L. Ed., 165, and *Rolston* v. *Crittenden,* 120 U. S., 390, 30 L. Ed., 721.

The latter case is mainly relied on to support the jurisdiction of the Federal Court in this matter, but it is entirely

different. A statute of Missouri required certain State officers therein named to assign certain liens on the Hannibal & St. Joseph Railroad Company to certain trustees upon their payment into the State treasury of a sum of money equal in amount "to all indebtedness due or owing by said company to the State, and all liabilities incurred by the State by reason of having issued her bonds, and loan the same to said company as a loan of the credit of the State, together with all interest that has and may at the time when such payment shall be made have accrued and remain unpaid by said company, and such fact shall have been certified to the Governor of the State by the Treasurer." In making and receiving payment, the trustees and the State officers differed as to the amount of interest which the statute required to be paid. The dispute was not as to what the officers had the discretion to receive in satisfaction of the obligation to the State,—for they had no discretion,— but as to what under the true construction of the statute they were required to receive as a pure ministerial duty. On this ground, as will clearly appear from the report of the case, the Court entertained a suit to enjoin the enforcement by the officers of what they alleged to be an unpaid debt of the State, which the trustees alleged had been paid as required by statute. The jurisdiction rested on the ground that the State officers could not protect themselves behind the State from being required to perform the ministerial duty which the State by its statute had required of them and which they had refused to perform in opposition to the State's command. Chief Justice Waite thus tersely states the ground of the decision: "It is next contended that this suit can not be maintained because it is in its effect a suit against the State, which is prohibited by the Eleventh Amendment of the Constitutiton of the United States, and *Louisiana* v. *Jumel,* 107 U. S., 711 (27 L. Ed., 448), is cited in support of this position. But this case is entirely different from that. There the effort was to compel a State officer to do what a statute prohibited him from doing. Here the

suit is to get a State officer to do what a statute requires of him. The litigation is with the officer, not the State. The law makes it his duty to assign the liens in question to the trustees when they make a certain payment. The trustees claim they have made the payment, the officer says they have not, and there is no controversy about his duty if they have. The only inquiry is, therefore, as to the fact of a payment according to the requirements of the law. If it has been made, the trustees are entitled to their decree."

The present case falls clearly within the principle laid down in *Louisiana* v. *Jumel*. 107 U. S., 711, 27 L. Ed., 448, and other authorities above cited, and is not embraced in the distinction made in the Rolston case. Neither in the latter case nor any other is the principle questioned that where discretion is conferred on the officer to act for the State in the ascertainment of its debt or in any other manner within its sphere of action, he is responsible to the State alone and a suit against him with respect to such discretion is a suit against the State.

We are not careful to inquire whether the discretion lodged in the Commission is the discretion of judicial or executive officers, for the Supreme Court of the United States rests its conclusion that no court can disturb the discretion with which the State has invested its officers or agents upon no such distinction. But, if the distinction be essential, it has been held in numerous cases in this State, from *Richland* v. *Miller,* 16 S. C., 236, to *Lockwood* v. *Adams*, 63 S. C., 191, 41 S. E., 82, that the county board of commissioners, a board whose statutory duty is to investigate and approve claims against the county, in performing this duty exercises a judicial function. This Dispensary Commission, though having only a temporary existence, is charged by statute with precisely the same duty with respect to claims against the State on account of the Dispensary; and by parity of reasoning their discretion is a judicial discretion and their action with respect to the validity of the claims, judicial action; and we so hold.

The State has a right to lay down any condition, however hard or arbitrary, it may choose, with which its creditors must comply as to a condition of payment of their demands. No court has a right to abate one jot or tittle of such condition. There is no ground to say that the condition that the creditor shall abide the finding of any person designated by the State to act for it in ascertaining the validity of his claim is an exception to this principle.

Not only was discretion imposed on the Commission in ascertaining the fraudulent and *bona fide* claims against the State, but the State itself has a very large interest in the $800,000 in its hands. The doctrine recognized and applied by the Supreme Court of the United States, and all courts, is thus stated by Justice Lamar in *Pennoyer* v. *McConnaughy, supra*: "The Court will look behind and through the nominal parties to the record to ascertain who are the real parties to the suit." *In re Ayers,* 123 U. S., 443, 31 L. Ed., 216 ; *New Hampshire* v. *Louisiana,* 108 U. S., 76, 27 L. Ed., 656. In this case it is not necessary to look behind the record, for the record in the Federal Court and this Court shows beyond dispute the State's interest to be vitally involved in the suits brought in the Federal Court. That interest is not only its obligation as a government to protect itself against fraudulent claims, but the surplus over just debts is to be paid by the Commission into the treasury of the State for the use of the State. That the State is a necessary party to any suit affecting the funds is self-evident, for surely it is entitled to be heard in the adjudication of what are fraudulent claims against it and how much surplus is to remain for its use.

It is no answer to say the State will not be bound by the proceedings and judgment in the Federal Court, for that Court is undertaking to control and dispose of the public funds in the hands of the State officers, and when the funds leave the hands of the State officers and are disposed of under the order of that Court, there will be nothing to which any right of the State can attach.

Lastly, let it be assumed for the moment, contrary to our conclusion, that the State by the Statute of 24th of February, 1907, creating the Commission, did consent that those who held claims against it on account of the Dispensary should have their claims adjudicated by the courts and the State Dispensary assets administered by the courts and applied to the claims so adjudicated.    This would not alter the result, for it is obvious, if any such consent was ever given, it was withdrawn by the amendment of 24th of February, 1908, wherein it is provided: "that said Commission is hereby declared to possess full powers to pass upon, fix and determine all claims against the State growing out of dealings with the Dispensary.    And to pay for the State any and all just claims which have been submitted to and determined by it, and no other, out of the assets of the Dispensary which have or may hereafter be collected by said Dispensary Commission: *Provided,* That each and every person, firm or corporation presenting a claim or claims to said Commission, shall have the right to appeal to the Supreme Court, as in cases at law: *Provided, further,* That notice of intention to appeal shall be served upon said Commission within ten days of rendition of judgment by the said Commission, and the practice in taking all steps in perfecting the appeal shall conform to the practice in other appeals to the Supreme Court.    That no funds arising from the sale of the assets of the former State Dispensary, or from the collection of debts due the Dispensary or moneys delivered by the State Treasurer to said Commission shall be paid out for any purpose or to any person whatsoever, except upon the check of the chairman of said Commission, countersigned by the Treasurer of the State of South Carolina. And the Treasurer of the State of South Carolina shall countersign such checks as may be presented by the chairman of said Commission only upon presentation of the same, together with a certificate of said Commission or a majority thereof, which certificate shall show: that the said check is issued in payment of some expense provided for by stat-

ute, or necessary incident for closing up the affairs of the Dispensary, or for services rendered said Commission in closing up the affairs of said Dispensary, or contracted for in accordance with law by said State Dispensary Commission, or that it is in payment of a claim of a creditor which has been adjudged by said Commission to be due, and upon such adjudication ordered paid."

This amendement in the clearest terms provides an exclusive condition to the recognition and payment of claims against the State on account of the operation of the State Dispensary, namely, that such claims shall be judicially examined and adjudicated by the Commission. Consent of a State that it may be sued is not a contract and can be repealed or modified at any time at the discretion of the State, even after suit has been commenced; and when the consent to the adjustment of claims against it by suit is withdrawn by the State, the jurisdiction of the court in which the case is pending is at an end and the suit falls to the ground. *Beers* v. *Ark.,* 61 U. S., 527, 15 L. Ed., 991; *In re Ayers,* 123 U. S., 443, 31 L. Ed., 216; *Hans* v. *Louisiana,* 134 U. S., 1, 33 L. Ed., 842. It follows, therefore, if the Federal Court had jurisdiction under the original statute, it came to an end upon the enactment of the Statute of the 24th February, 1908.

The cases where States have held stock in banks along with others or as sole stockholders are so far apart from this case that only one remark may be made as to them. In such case the bank is not a department of the State government. as the Dispensary was, but a corporate entity entirely apart from the State. The State has no right whatever to the bank's funds until the bank's debts are paid, and it can confer no more right to convert them than can any other stockholder. Therefore, any officer of the State undertaking to hold the funds of a bank against the bank or its creditors does so, not in accordance with the law but in defiance of law. He can not derive authority from the State for such conversion, because the State can have no such authority to confer.

*Banks* v. *Dabney,* 19 Wall., 1; *State* v. *Bank of the State,*
1 S. C., 63; *Curren* v. *State Bank of Arkansas,* 15 How.,
304.    It may be under the principles which we have stated,
after the Commission has performed the duty imposed and
exercised with discretion conferred by the State by exam-
ining into and deciding on the validity of a particular claim,
the payment of that claim from the funds in its hands would
be a ministerial act which it could be compelled to perform
by a mandamus or other appropriate remedy.    That point
is not before us.    We hold that the State has not consented
that any court shall adjudicate the debt set up against it
for liquor sold to it, nor has it consented that $800,000 of
its public funds held by its fiscal officers shall be adminis-
tered by any court; and hence the Federal Court had no
jurisdiction to pass the order restraining the respondents
from paying out such funds.    The order of injunction of the
Federal Court, therefore, affords no legal protection to the
defendants and their return is adjudged insufficient.

The judgment of this Court is that the petitioners are
entitled to a writ of mandamus from this Court requiring
the respondents constituting the State Dispensary Commis-
sion to pay from the funds in their hands to the
State Treasurer, the sum of $15,000 for the use of
the Attorney-General, as provided by the Statutes of
the State, approved 24th of February, 1908.    It is a well-
recognized principle, however, that the United States Su-
preme Court itself follows the decision of the State Supreme
Court in the construction of State Constitutions and
statutes, and of course this rule is binding upon the Circuit
Court of the United States.

This Court will not therefore assume that the construction
which it has placed upon the State Constitution and the
statutes in question will be disregarded by the Federal Court.

The issuing of the peremptory writ of mandamus is,
therefore, left in abeyance until the further order of this
Court.