## CAROLINA GLASS CO. v. MURRAY et al.

### (Circuit Court of Appeals, Fourth Circuit. July 10, 1913.)

### No. 1,156.

COURTS (§ 305*)—ACTION AGAINST STATE—NECESSARY PARTY—REAL PARTY IN INTEREST.

Where county dispensary boards purchased supplies for the sale of intoxicating liquor as authorized by Act S. C. Feb. 16, 1907 (25 St. at Large, p. 463), and regulated by Act S. C. Feb. 23, 1910 (26 St. at Large, p. 876), the title to such supplies vested in the state, so that, the board having paid the proceeds of sales to other designated officers of the state as required by law, an action by a creditor, having furnished supplies, to recover therefor on a quasi contract, was one to which the state was a necessary party, within Const. U. S. Amend. 11, providing that the judicial power of the United States shall not be construed to extend to any suit at law or in equity commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 844, 844½, 986; Dec. Dig. § 305.*]

In Error to the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. M. Smith, Judge.

Action by the Carolina Glass Company against W. J. Murray and others. Judgment for defendants, and plaintiff brings error. Affirmed.

J. B. S. Lyles and D. W. Robinson, both of Columbia, S. C. (Lyles & Lyles and J. T. Seibels, both of Columbia, S. C., on the brief), for plaintiff in error.

W. F. Stevenson, of Cheraw, S. C., and B. L. Abney, of Columbia, S. C. (C. L. Prince, of Cheraw, S. C., on the brief), for defendants in error.

Before PRITCHARD, Circuit Judge, and KELLER and CONNOR, District Judges.

PRITCHARD, Circuit Judge. This was an action at law, instituted by the Carolina Glass Company, plaintiff in error (hereinafter referred to as plaintiff), against W. J. Murray, John McSween, A. N. Wood, Avery Patton, and J. S. Brice, defendants in error (hereinafter referred to as defendants), to recover the sum of $19,084.38 alleged to be due plaintiff by the several county dispensary boards of South Carolina. When the case came on for trial the parties by written stipulation waived a jury trial, and the facts were found by the court below as follows:

"The complaint is in the nature of an action against the individual defendants for moneys by them had and received, and which moneys they ought ex æquo et bono to refund to the plaintiff as its property. The defendants were at one time members of the State Dispensary Commission, appointed under the act approved February 16, 1907 (Stats. S. C. vol. 25, p. 463), and as such received a sum of money under the following circumstances, as appears by the testimony in the case, viz:

"By an act approved February 16, 1907 (Stats. S. C. vol. 25, p. 463), the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

General Assembly of South Carolina enacted that wherever at the election in the act provided for any county voted in favor of the sale of alcoholic liquors and beverages it should be lawful that the same should be sold in such county, and that thereupon a board should be appointed, to be known as the 'County Dispensary Board,' who were authorized and required to establish dispensaries in the county for the sale of alcoholic liquors and beverages under the forms and limitations prescribed in the act. The act also provided:

" 'Sec. 6. The members of the said county dispensary board are hereby declared to be county officers, and are hereby authorized and empowered, under the authority and in the name of this state, to buy in any market and retail within the state, liquors and beverages as provided herein: Provided, that the state shall not be·liable upon any contract for the purchase thereof beyond the actual assets of the dispensary for which the purchase is made.'

" 'Sec. 11. Each dispenser shall daily deposit to the credit of the county board, in a bank designated by the board, all moneys received by him from sales.'

" 'Sec. 13. All sales shall be for cash and at a profit to be determined by the board.'

"By section 18 it is provided that the county dispensary board should quarterly in each year make a sworn statement of the profits, and at the same time divide and pay out the profits as so ascertained in the proportion fixed by the act of various public county purposes.

"The act appointed a State Dispensary Commission, although a separate act was approved on the same day as this last-mentioned act providing for county dispensary boards, viz., February 16, 1907. Under the act of February 16, 1907, creating the State Dispensary Commission, the commission so created was directed to close out the entire business of the State Dispensary as carried on by the state prior to the 16th of February, 1907, collect all debts due, and pay all just liabilities of the state growing out of the said business. The commission was given full power and authority to investigate the past conduct of the affairs of the dispensary. This act of 1907 was amended in 1908, so as to give the commission full power to pass upon, fix, and determine all claims against the state growing out of dealings with the dispensary and to pay for the state any and all just claims which have been submitted to and determined by it, and no other. Stats. S. C. vol. 26, p. 1293.

"The plaintiff in this case had furnished the state with bottles and demijohns used in the business of the State Dispensary as carried on prior to February 16,·1907, and had a claim therefor against the state for $23,013.75. This claim the plaintiff presented to the State Dispensary Commission, who, after investigation, found that, in pursuance of a conspiracy between some of the directors of the State Dispensary and some of the plaintiff's officers or agents to defraud the state, the latter had paid the plaintiff on glassware purchased between 1902 and April, 1906, a price exceeding the fair market value thereof by $51,432.94. Therefore, allowing plaintiff's claim of $23,013.75, the commission found that plaintiff was indebted to the state in the sum of $28,419.24,·the difference between the amount of its claims and the sum it had fraudulently collected from the state prior to April, 1906.

"From this decision of the commission an appeal was taken under the provisions of the act of 1907 to the Supreme Court of South Carolina. This appeal was heard by that court, which on the 17th of November, 1910, rendered its decision, holding that the plaintiff had no claim against the state. That court held further:

" 'The findings of the commission, however, are controlling only in its determination of the nonliability of the state upon appellant's claim. They have not the force or effect of a judgment, concluding appellant in any other proceeding—such, for instance, as the state might institute in the proper court to recover the amount found by the commission to be due it by appellant.'

"And again: 'So long, therefore, as the action of the commission was confined to the investigation of all dealings, past and present, with the dispensary, and the determination of the just liabilities of the state growing out of them, it was, as we have seen, based upon constitutional·authority, and was valid· and binding. But we find no authority in the Constitution for the Legislature to provide by law how claims of the state against others shall be established

or adjusted, except through the courts. We conclude, therefore, that in so far as the act of 1910 attempts to confer upon the commission power to pass final judgment upon the claim of the state against the plaintiff it is unconstitutional, null, and void.' Carolina Glass Co. v. State of S. C., 87 S. C. 270 [69 S. E. 391.]

"In the meantime, and after the creation of the county dispensary board under the act of February 16, 1907, the plaintiff from time to time furnished the county dispensary board for Richland county glassware under purchases made from it by that board, and on the 23d of February, 1910, there was admittedly due to the plaintiff for these purchases the sum of $4,963.13. On the 23d of February, 1910 (Stats. S. C. vol. 26, p. 876), by an act of the General Assembly of South Carolina approved that day, it was provided:

" 'Sec. 6. In any and all cases where the State Dispensary Commission has heretofore found any amount due the state by any person, firm or corporation on account of dealings with the State Dispensary, the several county dispensary boards now existing, and all boards and other officer or officers in charge of any money due any such person, firm or corporation on account of any dealings with any and all county dispensaries heretofore existing, shall, upon demand, pay to the state Dispensary Commission a sufficient amount, or so much thereof as may be on hand, to cover the amount so found to be due the state.'

"Subsequent to the 23d of February, 1910, and between that date and the 13th of December, 1910, the plaintiff delivered to the county dispensary board for Richland county additional supplies of glassware for which there was admittedly due to plaintiff $12,586.64, which added to the $4,963.13 due on the 23d of February, 1910, made a total of $17,550.07 admittedly due to plaintiff on December 13, 1910.

"On that day, viz., December 13, 1910, the county dispensary board for Richland county paid the sum of $17,550.07 to the State Dispensary Commission under the circumstances stated in the receipt given for the same, viz:

" 'Columbia, S. C., Dec. 13, 1910.

" 'Received from the Richland County Dispensary Board the sum of seventeen thousand five hundred and fifty 07-100 ($17,550.07) dollars, being the amount in the hands of the Richland County Dispensary Board to the credit of the Carolina Glass Company for goods and merchandise bought by the Richland County Dispensary Board from the Carolina Glass Company, which amount is paid to the State Dispensary Commission upon its demand made in pursuance of the provisions of the act of the General Assembly entitled "An act to further provide for winding up the affairs of the State Dispensary," approved 23d day of February, 1910, and in pursuance of the judgment of the Supreme Court in the case of Carolina Glass Company v. Dr. W. J. Murray et al.

" 'State Dispensary Commission.
" '$17,550.07. By W. J. Murray, Chairman.'

"On the 22d of November, 1910 (after the filing of the opinion of the Supreme Court of South Carolina in Glass Co. v. State of S. C.), the plaintiff in this case gave the defendants personal notice that they would be held personally liable for any funds due to plaintiff by any county dispensary board which the defendants should hold and not pay over to the plaintiff.

"On receiving this amount of $17,550.07 the defendants held it until March 27, 1911, when they turned it over to the persons who had been appointed as members of the State Dispensary Commission in succession to the present defendants who had ceased to be such.

"The contention of plaintiff is that this amount of $17,550.07 was a fund to which plaintiff is and was entitled, and it came into the hands of the defendants on December 13, 1910, under circumstances which fully notified the defendants that ex æquo et bono they were bound to pay it to plaintiff and that the action of defendants in turning it over on March 27, 1911, to their successors in office, was tortious and unlawful after the notice of November 22, 1910, and leaves defendants personally responsible for the amount.

"The jurisdiction of this court is invoked on the ground that the act of February 23, 1910, is in contravention of section 10, art. 1, of the United

States Constitution, as impairing the obligation of the contract whereby, under the act of February 16, 1907, the county dispensary board was bound to pay to plaintiff the amount admittedly due for the glassware furnished by it, and is further in contravention of the fourteenth amendment of the United States Constitution, in that it seeks without due process of law to take the amount of $17,550.07 admittedly due to plaintiff and arbitrarily apply it to the payment of a contested claim made by the state, not yet judicially established, for $28,419.24 against the plaintiff."

The court below, after having found the facts, also discussed at some length the merits of the case, but at the same time reached the conclusion that this was a suit against the state, and dismissed the same for want of jurisdiction.

There are seven assignments of error. However, in view of the action of the lower court in dismissing the same for want of jurisdiction, we only deem it necessary to consider the fifth, which is in the following language:

"That the court erred in ruling as a matter of law, upon the undisputed facts, that this suit is a suit against the state of South Carolina and to which the said state is a necessary party, and so is within the express prohibition of the eleventh amendment of the Constitution of the United States. Whereas, the court should have ruled that the suit is one brought by plaintiff to recover money illegally confiscated and redress grievances illegally inflicted by the individual defendants, claiming to act as the State Dispensary Commission by virtue of the authority given them by section 6 of the act of 1910, when the said act is and always has been null and void, because of section 10 of article 1, and the fourteenth amendment of the Constitution of the United States, and therefore afforded no protection or color of authority for the illegal acts of the defendants."

In order to determine whether this is a suit against the state, we must ascertain to whom the fund of $17,550.07 belonged, both before and after it reached the hands of the defendants.

Section 6 of the act of 1907 authorizes and empowers county boards, in the name and under the authority of the state, to buy in any market, and to retail within the state, liquors and beverages. If the liquor and beverages were purchased by the dispensary board in pursuance of this act, it necessarily follows that in so doing such boards were acting for and on behalf of the state, and any purchases made, or funds realized from the sale of the same in pursuance thereof, thereby became the property of the state and subject to its control as such. The fact that the county dispensary boards are declared to be county officers in no wise affects the ownership of the state of any property that may have been purchased by such boards. The state has as much right to constitute county officers its agents as it would to employ any other person or persons to act in its behalf in the transaction of its business, and this is precisely what it did in this instance. The mere designation of these officials as county officers could not deprive the state of any right to property which it may have purchased through them while they were acting in pursuance of authority granted by the state. A careful examination of the Constitution as well as the act of South Carolina, as respects the dispensary, clearly shows that it was the policy of that state to retain complete control over the purchase and sale of liquors, as well as the title to the same.

Among other things, it is provided by the act in question that the

state shall not be liable beyond the actual assets of the dispensary for which the purchases are made. The foregoing clearly indicates that, while the state stands back of the dispensary board in the purchase of goods, yet it is not liable for any debts that such boards may have incurred in excess of the actual assets of the dispensary.

This was a precautionary measure, intended to protect the state in cases where the board should attempt to contract debts beyond the amount of assets, and was notice to the world that the state would only pay such debts as were not in excess of the assets of the dispensary.

These provisions clearly indicate that it was the purpose of the Legislature to make the dispensary board subordinate to and under the control of the state in all particulars and at all times, so long as they continued in business; and among other things it is provided that after certain expenses are paid, and the proportion allotted to the county was set apart for that purpose, that any net profits were to be accounted for to the state, and retained by it as its property.

The Supreme Court of the state of South Carolina, in construing section 6 of the act of 1907, held that these county dispensaries were conducted under the authority, and in the name of the state. This question was before the Supreme Court of that state in the case of State v. Dispensary Commission, 79 S. C. 325, 60 S. E. 931, the court, among other things, said:

"The General Assembly may require the public funds or any part of them to be put in any place or with any person it sees fit; and there is no limit to its power in imposing conditions and conferring discretion on its fiscal agent as to the disbursement of these funds to its creditors."

And also in the case of State v. Dispensary Commission, 79 S. C. 326, 60 S. E. 928, the Supreme Court of that state quoted with approval the ruling of the Supreme Court of the United States in the case of Buchanan v. Alexander, 4 How. 20, 11 L. Ed. 857, in which that court said that:

"So long as money remains in the hands of a disbursing officer, it is as much the money of the United States as if it had not been drawn from the treasurer."

The Supreme Court of the United States, in the case of Murray v. Wilson Distilling Co., 213 U. S. 151, 29 Sup. Ct. 458, 53 L. Ed. 742, referring to the provisions of the Constitution and statute of that state as respects the dispensary question, said:

"If we consider as an original question the provisions of the Constitution of South Carolina on the subject and the terms of the statutes of that state establishing the dispensary system, we think it is apparent that the purchases which were made by the state officers, or agents, of liquor for consumption in South Carolina, were purchases made by the state for its account, and, therefore that the relation of debtor and creditor arose from such transactions between the state and the persons who sold the liquor. And this irresistible conclusion, arising from the very face of the Constitution and statutes, is removed beyond all possible controversy by the decision of this court in Vance v. Vandercook, No. 1, supra [170 U. S. 438, 18 Sup. Ct. 674, 42 L. Ed. 1100], and by the construction given by the Supreme Court of South Carolina to the state statute prior to the commencement of this litigation, in State v. Farnum, supra [73 S. C. 165, 53 S. E. 83], as well as by the convincing opinion

expressed by that court in reviewing the state statutes in the mandamus case already referred to as reported in 79 S. C. 316 [60 S. E. 928]. We could not, therefore. sustain the exercise of judisdiction by the Circuit Court without in effect deciding that the state can be compelled by compulsory judicial process to perform a contract obligation. It is certain that, at least by indirection, the bills of complaint sought to compel the state to specifically perform alleged contracts with the vendors of liquor by paying for liquor alleged to have been supplied. But it is settled that a bill in equity to compel the specific performance of a contract between individuals and a state cannot, against the objection of the state, be maintained in a court of the United States. Thus, in Hagood v. Southern, 117 U. S. 52 [6 Sup. Ct. 608, 29 L. Ed. 805], where, in suits brought in a court of the United States against officers and agents of the state of South Carolina, the holders of certain revenue scrip of the state endeavored to enforce the redemption thereof according to the terms of the statute, in pursuance of which the scrip was issued, which statute was alleged to constitute an irrepealable contract, the court said: 'Though not nominally a party to the record, it [the state] is the real and only party in interest; the nominal defendants being the officers and agents of the state, having no personal interest in the subject-matter of the suit, and defending only as representing the state. And the things required by the decrees to be done and performed by them are the very things which, when done and performed, constitute a performance of the alleged contract by the state. The state is not only the real party to the controversy, but the real party against which relief is sought by the suit; and the suit is, therefore, substantially within the prohibition of the eleventh amendment of the Constitution of the United States, which declares that "the judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." * * * The absence in the winding-up act of a provision conferring authority to review in the ordinary courts of justice the action of the commission concerning claims, instead of supporting the contention that the state had abandoned all property right in the funds placed in the hands of the commission, tends to a contrary conclusion, since it at once suggests the evident purpose of the state to confine the determination of the amount of its liability to claimants to the officers or agents chosen by the state for that purpose. And it is elementary that, even if a state has consented to be sued in its own courts by one of its creditors, a right would not exist in such creditor to sue the state in a court of the United States. Smith v. Reeves, 178 U. S. 436 [20 Sup. Ct. 919, 44 L. Ed. 1140], and cases cited; Chandler v. Dix, 194 U. S. 590 [24 Sup. Ct. 766, 48 L. Ed. 1129]. The situation, therefore, was not changed as a result of the subsequent act of February 24, 1908, giving the creditors of the state, whose claims might be adversely acted upon by the commission, the right to a review in the Supreme Court of the state.' "

We have carefully considered the authorities relied upon by plaintiff, but are of the opinion that they do not apply to the case at bar. In view of the decisions of the Supreme Court of South Carolina, as well as the decision of the Supreme Court of the United States, we are impelled to the conclusion that the state is a necessary party to this action. Such being the case, the ruling of the lower court in dismissing the same for want of jurisdiction was eminently proper.

For the reasons stated, the judgment of the lower court is affirmed. Affirmed.