7724

CAROLINA GLASS CO. v. STATE OF SOUTH CAROLINA.

CAROLINA GLASS CO. v. STATE DISPENSARY COMMISSION.

1. STATE DISPENSARY COMMISSION.—Statement by a member of a commission authorized to pass on an account against the State to counsel in the beginning of the argument, that his impression from reading the evidence was that the claimant owed the State and he wished to hear argument on that point, does not show the commissioner was prejudiced against appellant's claim.

2. IBID.—JUDGMENT.—Under the statute creating the dispensary commission, it has the power to ascertain the amount due the State by a claimant, and in arriving at that conclusion it could ascertain if the claimant is due the State anything and state the difference as the result of its finding, although such finding would not have the force and effect of a judgment by a Court.

3. EVIDENCE.—Under the charge of conspiracy to defraud the State, testimony that claimant had sold glass to others in smaller quantities for less than it sold to the State, and that lower bids had been rejected by officers of the State, is competent and relevant.

4. STATE DISPENSARY COMMISSION—CONSTITUTIONAL LAW.—THE LEGISLATURE has the power to confer on the State dispensary commission authority to collect from the county dispensaries any funds in their hands due parties who are indebted to the State by reason of transactions with the State dispensary, and the Courts have no power to interfere.

5. IBID.—IBID.—THE LEGISLATURE has no power under the Constitution to authorize a commission to pass final judgment on the claim of the State against a citizen, and so much of the act of 1910, 26 Stat., 876, as authorizes the State dispensary commission to make such judgment, is unconstitutional and void, and so also is so much of the

act as attempts to create a lien by such judgment on the property of the citizen.

6. REHEARING refused.

Appeal by the Carolina Glass Co. to this Court from the decision of the State Dispensary Commission and action for injunction by same corporation against the State Dispensary Commission, J. Fraser Lyon, Attorney General; B. L. Abney, W. F. Stevenson and Anderson, Felder, Rountree & Wilson, heard together here.

The decision from which the appeal is taken is:

"State of South Carolina, County of Richland.

"In the matter of the claim of the Carolina Glass Company against the State Dispensary of South Carolina:

"The foregoing matter having come on for a hearing before this Commission, and evidence having been taken for and against the claim made by said Carolina Glass Company against the State Dispensary, and after hearing the argument of the counsel representing said claimant and counsel representing the interests of the State,

"This Commission, exercising its powers under and by virtue of an Act of the General Assembly of the State of South Carolina approved February, 1907, and Acts amendatory thereto, find as follows:

First. "That the Carolina Glass Company was organized during the summer of 1902 in pursuance of an agreement which had been made between its promoters and certain members of the Board of Directors of the South Carolina State Dispensary whereby it was intended that the said Carolina Glass Company should manufacture such' glass as the Board of Directors of the State Dispensary might agree to purchase, and that awards for the purchase of glass to be used by said State Dispensary should be made exclusively to the Carolina Glass Company; and that said officers and promoters of the said Carolina Glass Company and said

Board of Directors or some of them entered into a conspiracy to defraud the State of South Carolina by preventing and defeating all competition in the sale of glassware needed, used or purchased by the State Dispensary, and did in fact destroy all such competition.

Second. "That in pursuance of this understanding and agreement the said Carolina Glass Company bid (in September, 1902) to furnish fifty cars of glass bottles at prices ranging about ten per cent. in excess of the prices that were then being paid by said State Dispensary to Flaccus & Company, with whom the State Dispensary then had a contract, a large part of which was still unfilled; and notwithstanding this fact and the further fact that at the same time other bids were filed from other reputable houses at lower prices, said Board of Directors awarded the contract to said Carolina Glass Company at those prices; that on or about December 3, 1902, the said Carolina Glass Company entered into an agreement with said Flaccus & Company under and by virtue of which the Carolina Glass Company purchased the contract of said Flaccus & Company and agreed to assume its full and complete performance, and also by the terms of said contract purchased from said Flaccus & Company the special moulds needed to manufacture the special bottles required under the rules of the Board of Directors of the State Dispensary and other material used in connection with their manufacture and packing; that the Board of Directors of the State Dispenasry thereupon ratified the transfer of this contract from Flaccus & Company to the Carolina Glass Company and there was at the time the same was purchased twenty-two cars of glass still to be delivered under its terms; that thereafter said Carolina Glass Company did not deliver any glass whatever to the State Dispensary as being manufactured under the terms of the Flaccus contract, nor at the price named in the Flaccus contract, but continued to manufacture glass under the award which has been made to it under its bid filed in September,

1902, until in March, 1903, another award was made by said Board of Directors of the South Carolina Dispensary to said Carolina Glass Company at substantially the same prices, although at that time its own contract made in September, 1902, had not been fully executed and no part of the remaining cars of glass called for under the Flaccus contract had been manufactured or delivered, and notwithstanding the further fact that there were several bids made for the manufacture and delivery of glass under the terms and conditions imposed by the Board of Directors of the State Dispensary for much lower prices and for goods of just as good quality, the said bid of the Carolina Glass Company being then the highest bid made for the furnishing of glass with the exception of a bid by Flaccus & Company, which was a few cents higher than that of the Carolina Glass Company, and which the Commission finds was a dummy bid, not intended to be accepted, but made in pursuance of an understanding between said Flaccus & Company and the Carolina Glass Company that the former would not compete for business with the State Dispensary but would file this bid as a blind; said Flaccus & Company having no moulds or other facilities at that time for manufacturing any of the glass required by the Board of Directors of the State Dispensary.

Third. "That for several quarterly periods following that of March, 1903, bids were invited for glass to be furnished to the State Dispensary and other bidders filed bids besides the Carolina Glass Company, all of which were lower in price (though for goods equal in quality) than those proposed at the same time by the Carolina Glass Company, and that some of the bids were suppressed by said Board of Directors, with the consent of the Carolina Glass Company, so that no entry or record was made upon the books of said Board of Directors of the State Dispensary in regard thereto; that notwithstanding this, awards in each instance

18—87

were made to the said Carolina Glass Company and purchases made from it at the higher prices named in their bids.

Fourth. "That after December 3, 1902, and until the early part of the year 1906, when pursuant to a concurrent resolution of the Senate and House of Representatives of the State of South Carolina, the existing contract between the State Dispensary and the Carolina Glass Company, as to unfilled portions thereof, were canceled, the said Carolina Glass Company, by and with the aid and assistance of the Board of Directors of said State Dispensary and in furtherance of the conspiracy already formed to destroy and prevent all competition in the sale of glass to said Dispensary, secured and maintained a complete monopoly of all the business in that commodity that was done with said State Dispensary; that after the year 1902, and during the remainder of the period above named said Carolina Glass Company secure in the monopoly then created, raised its prices from time to time and were awarded contracts therefor, by said Board of Directors, said prices being at all times much above the fair market prices for the goods sold. Said Board of Directors continuing at nearly every quarterly meeting to award new contracts to said Glass Company at those exorbitant prices, whether the goods were then needed or not, and notwithstanding that said Glass Company had never filled said Flaccus contract until, at the time of the passage of the concurrent resolution by the two Houses of the General Assembly of South Carolina in 1906 canceling the unfilled portions of existing contracts, there were outstanding contracts at exorbitant prices under which there remained to be filled orders for more than two hundred cars of glass bottles of the approximate value of more than $200,000; by which action on the part of the General Assembly, according to the testimony of one of the officers of said Glass Company, the State saved more than $50,000 when comparison is made with the prices paid for goods subsequently purchased.

Fifth. "That said Carolina Glass Company sold goods of the same quality and size and general character as that sold to the State Dispensary in other States and in other parts of the State of South Carolina at prices which, making allowances for all credits properly to be given to said Carolina Glass Company for the different conditions under which those sales were made, averaged in prices from twenty to twenty-five per cent. below the prices at which the same goods were being sold to the State of South Carolina; the agent of said Carolina Glass Company admitting in his evidence before this Commission that the purchase of the Flaccus contract was made for the purpose of getting rid of a competitor, and that wherever his company sold goods in competition with others they met that competition by selling the goods at lower prices than the same were sold to the State of South Carolina.

"We therefore find that the contracts made between the Carolina Glass Company and the Board of Directors of the State Dispensary were contrary to the laws of the State and against public policy, and for those reasons null and void, and that the said Carolina Glass Company should not, as a matter of strict law, be entitled to recover any sum of money from the State of South Carolina on account of said contracts, even if the State had no offsets against them whatsoever; but the Commission further finds that it should determine the matter on equitable principles and fix the matter of liability on a 'quantum meruit' basis and that the prices at which the Carolina Glass Company sold to the State Dispensary the glassware manufactured by it ranged throughout the entire period of their transactions with the State Dispensary, except for the years 1906 and 1907 at about ten per cent. above the fair and reasonable market price for said goods. The Commission finds that the total amount of sales, after making all proper corrections therein, made by the Carolina Glass Company during the entire period of the transactions with the State Dispensary up to

the time it was abolished, was $613,437. Of this amount the sum of $99,108 was for goods sold during the year 1906 and the short period during 1907 during which that Dispensary was conducted, so that the total sales made by the Carolina Glass Company during the years preceding the year 1906 aggregated $514,329.90.

"The Commission finds that beginning early in the year 1906, as the result of a legislative investigation made by a committee appointed by the General Assembly of the State of South Carolina and the resolutions adopted by the General Assembly relating especially to the contracts with the Carolina Glass Company hereinbefore referred to, the Carolina Glass Company was forced to and did lower its bids to prices which during that year and the short period of 1907 during which the Dispensary was operated, were substantially in accord with the fair and reasonable market price of the goods sold during that period; but the Commission finds that during the years preceding 1906 the overcharges made in excess of the fair and reasonable market price for the goods sold was $51,432.99, which should be and is hereby offset against the claim in favor of said Carolina Glass Company, to wit, its claim for $23,013.75, which, being deducted from the amount of said overcharges, the Commission finds said Carolina Glass Company to be indebted to the State of South Carolina in the sum of $28,419.24.

"Whereupon judgment is rendered in accordance with the foregoing findings."

*Messrs. D. W. Robinson* and *W. H. Lyles* for plaintiff in first stated case. *Mr. Robinson* cites: *Special tribunals are strictly confined to powers granted:* 1 Bail. 460; 12 S. C. 214; 112 U. S. 306; 8 How. 449; 6 Wheat. 127; 1 Hill 53; 1 McClover 16; 49 Cal. 525; 5 Rand. 636; 66 U. S. 488; 85 C. C. A. 38; 1 Strob. 1; 6 Wheat. 127; 79 S. C. 320. *Under the Constitution all judicial power is vested in*

*the Courts:* 79 S. C. 334; 213 U. S. 172; 73 U. S. 247. *What is the Dispensary Commission?* 12 S. C. 111; 12 S. C. 244. *Alleged overcharge is not a counterclaim:* 34 Cyc. 626, 625, 623, 642, 643; 37 S. C. 593; 19 Cyc. P. & P. 726; 1 McC. 491. *Notice or pleading of counterclaim is necessary:* 15 S. C. 461; Pom. on Rem. 660. *The plaintiff is deprived of due process of law:* 18 How. 272; 110 U. S. 516; 111 U. S. 701; 129 U. S. 114; 92 U. S. 480. *Right of State to sue:* 19 Cyc. 726-7; 40 Am. Dec. 373; 41 Am. Dec. 549; 43 N. E. 226; 10 Minn. 39; 106 U. S. 196; 103 U. S. 168. *Vested rights and obligation of contracts are impaired by Commission setting up counterclaim:* 96 U. S. 595; 13 Rich. 279; 6 How. 327; 83 U. S. 203. *Trial by jury is refused:* 106 U. S. 412; 11 How. 447; 131 U. S. 32; 8 Wheat. 25. *Statute of 1910 is not retrospective and could not operate on plaintiff's claim:* 34 S. C. 477; 191 U. S. 552.

*Messrs. Lyles & Lyles, Jno. T. Seibels* and *D. W. Robinson,* for plaintiff in second stated case, cite: *The Court will apply constitutional provisions to the facts without specific pleading:* 12 Ency. P. & P. 1; 16 Cyc. 889; 1 Cranch. 137; 75 U. S. 44; 54 S. C. 1; 63 S. C. 169. *The acts of 1907 and 1908 invested the Commission with no authority to consider claims by the State against any person:* 25 Stat. 835; 79 S. C. 316; 213 U. S. 151; 59 U. S. 272; 142 U. S. 660; 188 U. S. 505; 213 U. S. 171; 34 Cyc. 625, 626, 642, 643; 37 S. C. 593; 19 Cyc. P. & P. 726; 1 McC. 491; 1 Bail. 121. *The act of 1910 violates Sec. 1 of Art. V of the Constitution, because it invests the Commission with jurisdiction to consider claims by the State against an individual or corporation:* 59 S. C. 110; 21 S. C. 560; 1 Cranch. 137; 36 L. R. A. 824; 2 Shars. Black. 24; 12 S. C. 111; 16 S. C. 244; 17 S. C. 80; 11 Fed. Cas. 5872; 14 Fed. 177; 36 L. R. A. 824; 59 U. S. 272; 23 Ency. 485; 48 Am. Dec. 339; 13 Am. Dec. 615; 47 L. R. A. 631; 2

Hill (N. Y.) 159; 40 Am. Dec. 378; 41 Am. Dec. 549; 43 N. E. 226; 10 Minn. 39; 103 U. S. 168. *This act also violates those provisions of the Constitution requiring the three branches of government to be kept separate:* 103 U. S. 168; 98 Fed. R. 335; 54 S. C. 1; 18 How. 272; 15 L. Ed. 377; 98 Fed. 346; 26 L. Ed. 387. *It also violates the due process and equal protection clauses of the State and Federal Constitutions:* 15 L. Ed. 376; 110 U. S. 516; 111 U. S. 701; 187 U. S. 51; 129 U. S. 114; 92 U. S. 480; 139 U. S. 462; 134 U. S. 418; 169 U. S. 466; 98 Fed. 335; 5 Johns. 477; 66 S. C. 194; 72 S. C. 9. *The act is also an arbitrary discrimination:* 63 S. C. 169; 66 S. C. 37; 166 U. S. 150; 75 S. C. 62; 207 U. S. 20. *To apply to plaintiff's claim the act must be held retroactive, which cannot be gathered from its terms:* 34 S. C. 477; 55 S. C. 302; 60 S. C. 70; 18 S. C. 481; 22 S. C. 504; 54 S. C. 251; 116 N. W. 98; 89 S. W. 399; 106 N. W. 566; End. on Int. of Stat. 271; 129 U. S. 36; 52 S. E. 821; 112 U. S. 536; 191 U. S. 552. *If retrospective, the act is void:* 13 Rich. 279; 34 S. C. 477; 22 S. C. 504; 9 S. C. 293; 18 S. E. 704. *It impairs obligation of contracts:* 96 U. S. 595; 6 How. 327; 4 L. R. A. N. S. 1077; 8 Wheat. 92; 2 How. 612; 30 S. C. 381; 75 S. C. 34; 18 S. E. 704; 3 L. R. A. N. S. 954; 147 Mich. 493; 83 U. S. 203; 9 Fed. Stat. Ann. 337. *It takes away trial by jury:* 106 U. S. 412; 11 How. 447; 131 U. S. 32; 8 Wheat. 28. *It takes away right of appeal:* 81 S. C. 534; 131 U. S. 22; Con. Art. V, Sec. 4; 207 U. S. 35. *A Legislative act cannot affect judicial proceedings already pending, especially where judgment has been rendered:* 26 S. E. 592; 18 S. E. 704; 12 Am. St. R. 352; 8 Fed. Stat. Ann. 849-50; 44 Ala. 418; 1 L. R. A. 530. *If the letter of Mr. Stevenson is not a contract it is an estoppel of the State to collect amounts due plaintiff from county dispensaries:* 100 U. S. 578; 11 How. 325; 39 S. C. 435; 72 S. C. 47; 32 S. C. 511; 27 S. C. 232; 10 Wal. 604; 96 U. S. 716; 17 Wall. 32.

*Messrs. J. Fraser Lyon, Attorney General; B. L. Abney, W. F. Stevenson* and *Anderson, Felder, Rountree & Wilson,* contra, cite, in the first named case: *The powers and duties of the Commission:* 25 Stat. 835, 1289; 79 S. C. 316; 12 S. C. 111. *If the agent of the State makes a secret agreement with the vendor against the interest of the State, the vendor will not be permitted to recover:* 113 N. Y. S. 737; 129 U. S. 643; 119 Fed. 279.; 46 Pac. 123; 71 N. E. 916; 174 U. S. 639; 24 N. E. 661. *Contracts against public policy and contrary to statute as to consideration or thing to be done are void:* 21 Wall. 441; 2 Wall. 45. *The State is never estopped by the unauthorized acts of its officers:* 60 S. C. 465. *Nor is it estopped from recovering sums of money obtained from its officers in fraud:* 41 So. 575; 117 La. 286.

The opinion in this case was filed November 17th, but held up on petition for rehearing until

November 29, 1910. The opinion of the Court was delivered by

MR. JUSTICE HYDRICK. The above stated cases were heard and will be considered together, as the second grows in part out of the first. At the session of 1905, a committee of the legislature was appointed, under a concurrent resolution, to investigate the affairs of the State Dispensary, 24 Stat., 1220. The resolution was very broad in its scope, and authorized the committee, among other things, to investigate all transactions connected with the dispensary and its management, present and past, and the connection of any of its officers with any corporation, concern or individual, contracting for the sale of goods to the State for the dispensary, and ascertain the financial standing of the business.

The investigations of the committee resulted in an act, passed in 1907, authorizing the appointment of a commission, to be known as the State Dispensary Commission, ·

whose duty it was to close out the entire business and property of the State Dispensary, collect all debts due, and pay "all just liabilities" of the State growing out of said business. The Commission was given "full power and authority to investigate the past conduct of the affairs of the dispensary." It was also clothed with all the power and authority conferred upon the committee, which had been appointed under the resolution above referred to. 25 Stat., 835. The act of 1907 was amended in 1908 so as to give the Commission "full power to pass upon, fix and determine all claims against the State growing out of dealings with the dispensary; and to pay for the State any and all just claims which have been submitted to and determined by it, and no other." 25 Stat., 1289.

Appellant presented to the Commission a claim for $23,013.75, as the balance due it by the State for bottles and demijohns furnished to the dispensary under contracts made with the Board of Directors from and including April, 1906, until the business was closed out by the Commission. Appellant had also furnished the dispensary practically all the bottles and demijohns used since about December, 1902; but all accounts prior to April, 1906, had been settled.

Upon the filing of this claim, the Commission went into an investigation of all past dealings of appellant with the dispensary; and after hearing a great deal of testimony and argument thereon, rendered its decision, dated November 17, 1909, which will be set out in the report of the case.

The conclusion and finding of the Commission was that, in pursuance of a conspiracy between some of the directors of the dispensary and some of the appellant's officers or agents to defraud the State whereby legitimate competition was destroyed, appellant had a monopoly of the business of furnishing glass to the dispensary from the date of its beginning business, in 1902, until April, 1906; and that the prices paid it for glass during that period exceeded the fair

market value thereof by $51,432.99. Therefore, allowing appellant's claim of $23,013.75, the Commission found that appellant was indebted to the State in the sum of $28,419.24, the difference between the amount of its claim and the sum it had fraudulently collected from the State.

From that decision this appeal was taken, under the provisions of the statute, giving every claimant the right of appeal to the Supreme Court, "as in cases at law." Appellant concedes that the jurisdiction of this Court is limited in such cases to a review of alleged errors of law. Many of the exceptions question the findings of fact on the ground that there is no testimony to support them. If that were so, they might be corrected as errors of law. But, after a very careful consideration of the testimony, we have failed to discover that any of the findings of fact are wholly unsupported by testimony. It would unnecessarily prolong this opinion to discuss in detail the evidence, which covers 650 printed pages, to point out that which tends to support the findings of the Commission, which are material to its decision. It would be an unprofitable task. Besides, any expression or opinion by this Court upon the sufficiency of the evidence upon any point might result in prejudice to others whose rights may be affected by the same testimony and facts inferable therefrom in other litigation which may grow out of the transactions in question. In this connection, it may not be out of place to say that we do not agree with appellant's counsel that the finding of the Commission of a conspiracy to defraud the State is an impeachment of the character for honesty and integrity of every stockholder, director and officer of the company. Corporations, like individuals, are bound by the acts of their agents within the scope of their authority, even those fraudulently done; and while the legal consequences of such acts must be visited upon the principals, it by no means follows that the principals can justly be charged with guilty participation in them. It is but fair to say that there is not a particle of

testimony tending to show that some of the stockholders, directors and officers of the company had any knowledge of the transactions which fell under the condemnation of the Commission.

The first exception alleging error of law is that after the testimony had been taken, and the argument was about to commence, one of the commissioners stated to appellant's attorney that, from his recollection and knowledge of the testimony, there was a doubt in his mind whether the State owed appellant anything; that he was under the impression, from the testimony, that it showed that appellant owed the State a large sum of money on account of overcharges; and asked that his argument be directed to that point. It is contended that this statement showed that the mind of the commissioner was prejudiced against appellant's claim, and that he was thereby disqualified to participate in the deliberations of the Commission. Such a contention is clearly untenable. The commissioner distinctly stated that the impression made upon his mind was from reading the testimony. Ordinarily, the mind of every intelligent man is impressed one way or the other as to the weight of evidence and its sufficiency to establish the facts in issue as he hears or reads it. There is no impropriety in the trier of facts stating to counsel the impressions so made upon his mind, that he may have the opportunity of so presenting the evidence as to remove the impression, if possible. It is common practice for Judges to state to counsel the bent of their minds as to the law or facts, so as to direct argument to the questions involved, and we have never heard the practice questioned or condemned. On the contrary, it is a distinct advantage to counsel in arguing a cause.

The next contention of appellant is that the Commission is not a Court, but a special tribunal of limited power, and that it exceeded its authority in undertaking to fix and

determine appellant's liability to the State, and then set off its claim against the liability so fixed. It is conceded that the Commission is not a Court, though its duties necessarily involve, to some extent, the exercise of judicial functions, as is always the case where judgment and discretion are to be exercised. It was created under Section 2 of Article XVII of the Constitution, which provides that "the General Assembly may direct by law in what manner claims against the State may be established and adjusted." *State* v. *Dispensary Commission,* 79 S. C. 316, 60 S. E. 928. Of a like nature was the "Court of Claims," created under a similar provision of the Constitution of 1868. *Ex parte Childs,* 12 S. C. 11. This being so, the Commission is limited to the exercise of such powers as are expressly conferred upon it by the statutes, and such as are necessarily implied from those conferred. This is true even of Courts of special and limited jurisdiction. *McKensie* v. *Ramsey,* 1 Bail. 460. . It is contended that authority "to pass upon, fix and determine all claims against the State" does not include authority to fix and determine claims in favor of the State against others. Such a construction of the statutes is too narrow, and unwarranted from their manifest purpose and intent. The Commission was authorized and directed to determine what were the "just claims" against the State growing out of the business, and to that end it was directed to investigate all transactions with the dispensary, past and present. For what purpose? Evidently to enable it to decide what were the just liabilities of the State. And how could it decide what, was the just liability of the State to a claimant without ascertaining what was the just liability of the claimant to the State growing out of his dealings with the dispensary? The determination of the one necessarily involved the other.

The question, therefore, whether the Commission had authority to entertain a "set off" or "counterclaim" in favor of the State against a claimant, in the technical sense in

which those terms are used in legal proceedings is not germane or material to the present inquiry. To what purpose should the Commission investigate, unless it announced the result of its investigation? We see no error, therefore, in the Commission stating its findings as the result of its investigation.

The findings of the Commission, however, are controlling only in its determination of the non-liability of the State upon appellant's claim. They have not the force or effect of a judgment, concluding appellant in any other proceeding—such, for instance, as the State might institute in the proper Court to recover the amount found by the Commission to be due it by appellant.

The exceptions assigning error in admitting in evidence certain testimony which had been taken by the investigating committee, appointed under the resolution hereinbefore referred to, cannot be sustained; because the record fails to show that objection was made to its introduction: on the contrary, it appears that it was introduced by consent. Besides, appellant was represented by counsel before the committee and cross-examined the witnesses, except one, whose affidavit was admitted without objection; and after the testimony was admitted, the Commission offered appellant opportunity to introduce testimony in rebuttal or to impeach the witnesses.

The next assignment of error is in admitting testimony to show that other manufacturers of glass had put in bids with the directors of the dispensary which were lower than the bids of appellant, which were accepted by the directors; and that appellant had, during the time it was furnishing the dispensary, sold bottles of the same kind to other buyers in smaller quantities at lower prices, because in dealing with the other buyers it had to meet competition, the contention being that appellant's bids having been accepted and contracts awarded upon them, such testimony was irrelevant. The testimony was clearly

relevant, because it tended to prove the charge of a conspiracy to defraud the State. If it be true, as contended, and as some of appellant's witnesses testified, that these smaller quantities were sold at lower prices merely to get rid of its remnants or surplus product, which was a very small per cent. of its output, that was a fact for the consideration of the Commission in determining the weight and sufficiency of the evidence, but it could not affect its relevancy.

We proceed next to dispose of the issues raised in the second case stated at the head of this opinion. These arise principally out of an act approved February 23, 1910, and what was done by the defendants under the provisions of that act, which, it will be noted, was passed subsequent to the decision of the Commission upon the claim of the plaintiff. The provisions of the first five sections of the act pertinent to this case are, in substance: That, in addition to the powers conferred by all previous acts, the Dispensary Commission shall have power to pass upon, fix and determine claims of the State against any person, firm or corporation heretofore doing business with the State Dispensary, and settle and receipt therefor; that the findings of the Commission under its provisions shall be final, and, upon the finding by the Commission that any person, firm or corporation is indebted to the State, the dispensary auditor and officials having charge of the funds of any county dispensary which may be indebted to such person, firm or corporation, shall pay to the Commission the amount so found to be due the State, or so much thereof as the funds in their hands due to such person, firm or corporation will pay, and the receipt of the Commission shall be a sufficient voucher therefor; that the Commission may, by its order, stop the paying out of any funds of any county dispensary by any officer having charge thereof. Sections 7 and 9 of the act are as follows :

Sec. 7. "The State Dispensary Commission is hereby empowered to pass all orders and judgments and do any and all things necessary to carry out the purposes of this act; and all judgments rendered by them for any claim due the State shall, be a lien on the property of the judgment debtor situated within this State, and a transcript of said judgment shall be filed in the office of the clerk of the Court of Common Pleas in each county where any property of such judgment debtor is situated.

Sec. 9. "In all cases pending before the said State Dispensary Commission, upon any claim or claims against any person or persons or any corporation or corporations owning any real estate in any county in this State, the said Commission shall file in the office of the clerk of Court in each county where such real estate is situated a notice of the pendency of such cases, and the said notice so filed shall be full notice to all persons whomsoever claiming any title to or lien upon such real estate acquired subsequent to the filing thereof, and the debt found by said Commission to be due the State shall have priority over the claims of all creditors, except creditors secured by mortgage or judgment entered and recorded prior to the filing of such notice, and the said real estate, in the hands of any person or persons whomsoever, shall be liable for the payment of such debt so found to be due the State."

Within a few days after the approval of the act. to wit. on February 26, 1910, the Commission, by its attorneys, filed in the office of the clerk of the Court for Richland county, in which county plaintiff owned real estate, a notice, headed or entitled, *The State* v. *Carolina Glass Co.,* and signed by the Attorney General and other counsel representing the State. The notice was as follows: "Notice is hereby given to all whom it may concern, that the above stated cause has been instituted, and is now pending before the State Dispensary Commission for the recovery against the Carolina Glass Company of $29,000.00, the amount

which has been found to be due from the said defendant to
the State of South Carolina owing to overcharges made by
said defendant in selling goods to the State Dispensary, and
this notice is given in accordance with the terms of an act
of the legislature passed in February, 1910, and duly
approved by the Governor." About the same time, notice
was served on the plaintiff, pursuant to the provisions of
the act, that the Commission would proceed to pass upon,
fix and determine the claim of the State against the plaintiff
on account of the overcharges growing out of its dealings
with the dispensary. Notice was also served on the
County Dispensary Board of Richland county, requiring
that board to pay to the Commission the amount due by said
board to the plaintiff.

Another feature of the case grows out of an agreement
alleged to have been made between the attorneys for the
plaintiff and the attorney representing the State with regard
to payments for shipments of glass made by plaintiff to the
county dispensaries after November 20, 1909. At the date
of the decision of the Commission on plaintiff's claim, sev-
eral of the county dispensaries were indebted to plaintiff for
glass shipped prior to the decision, and plaintiff was under
contract to make further shipments. But, fearing that pay-
ment of the amounts due it by the county dispensaries might
be stopped by order of the Commission, and being unwill-
ing, in view of the possibility of such action, to make
further shipments, without an agreement that payment
therefor would not be withheld, the attorney representing
the State in the matter of claims against the plaintiff and
others for overcharges against the dispensary, agreed with
plaintiff's attorney that payments for all shipments made
after November 20th would not be interfered with by the
Commission. There seems to have been some misunder-
standing between the attorneys as to what the agreement
was, or as to whether there was any agreement, with regard
to the amounts then due the plaintiff for shipments pre-

viously made.   No steps, however, were taken by the Commission or the State's attorneys to stop the payment of such debts, and plaintiff continued to collect them, as well as those accruing after November 20th.

Upon the filing and serving of the notices above mentioned, this action was commenced in the original jurisdiction of this Court, to enjoin the defendants from ordering the sums due to plaintiff by the county dispensaries withheld or paid over to the Commission, on the ground that the act of the Commission in fixing and determining the liability of plaintiff to the State was an excess of authority conferred by the statutes, and, therefore, null and void, and on the ground that the notice requiring the county board to pay to the Commission the amounts due by it to plaintiff, in so far as it affected shipments made subsequent to November 20th, was a violation of the agreement with plaintiff's attorneys.   Plaintiff also asks that the Commission be enjoined from asserting or claiming a lien upon its real estate in favor of the State by virtue of the notice filed with the clerk of Court for Richland county, on the ground that the sections of the act giving the State such lien upon the judgment of the Commission, or the right to acquire it by reason of such judgment, are unconstitutional.

Under the provisions of the Constitution (Art. VIII, Sec. 11) and statutes (25 Stat., 463) the county dispensaries are conducted "under the authority and in the name of the State."   Therefore, the officers in charge of them are agents of the State and the funds arising from the sale of liquors through them are the funds of the State, and the debts due for goods sold to them are the debts of the State.   In exercising the powers conferred upon it by the legislature, the Dispensary Commission is also the agent and representative of the State, "subject to no interference, except that of the General Assembly itself," and a suit brought against it is, in effect, a suit against the State.   *State* v. *Dispensary Commission,* 79 S. C. 316, 329,

60 S. E. 928.   As the State cannot be sued without its consent, no Court has power to interfere with or direct the disposition of the State's funds in the hands of its agents, unless it appears that they are acting without authority of law, or are refusing to recognize and obey the law to the detriment of private rights.   In *State* v. *Dispensary Commission, supra,* at page 325, this Court said: "The General Assembly may require the public funds, or any part of them, to be put in any place or with any person it sees fit; and there is no limit to its power in imposing conditions and conferring discretion on its fiscal agent as to the disbursements of these funds to its creditors.   When a discretion is conferred by the State, no Court can supplant the agent of the State and substitute for his discretion its own 'judgment."   In ordering the funds in the hands of the officers of the county dispensaries due to the plaintiff turned over to itself, the Commission acted within the limits of its authority and discretion conferred upon it by the Legislature, and this Court has no power to interfere.   From the foregoing, it will be seen that it is unnecessary to inquire or decide whether there was an agreement between the attorneys for plaintiff and the attorneys for the State, as to the collection of the amounts due plaintiff from the county dispensaries for shipments made prior to November 20th, or what the agreement was, or whether it has been violated.   The Dispensary Commission is the sole arbiter of the rights of the plaintiff, if it has any, with regard to that matter.

The claim that the State has a lien upon the real estate of the plaintiff by virtue of the provisions of Section 7, and by virtue of the notice filed with the clerk of Court under the provisions of Section 9 of the act of 1910, presents a serious and delicate question.   Unless the provisions of Section 7 must be construed to be retroactive, the lien cannot be claimed under this section. The rule is too well settled to require discussion that a

statute will not be construed so as to have retroactive effect, unless such construction is required by its express terms, or by a necessary implication.   There are no words in the act expressly giving any of its provisions retroactive effect, and there is no necessary implication from the language used that the Legislature intended that it should have such effect. Therefore, when the Legislature said, in Section 7, that "all judgments rendered by them (the Commission). for any claim due the State shall be a lien on the property of the judgment debtor situated within the State," it meant all judgments rendered after the passage of the act.   As the only judgment, in any sense of the word, rendered by the Commission against the plaintiff was rendered before the passage of the act, no lien upon the property of the plaintiff was given or intended to be given by virtue of that judgment.

The Constitution ordains (Art. I, Sec. 14) that "the legislative, executive and judicial powers of the government shall be forever separate and distinct from each other, and no person or persons exercising the functions of one of said departments shall assume or discharge the duties of any other."   This language is as strong as it is simple and clear.   The Legislature therefore cannot assume to itself the exercise of judicial powers.   *Seegers* v. *Parrott,* 54 S. C. 1.   Nor can it confer "judicial powers," in the sense in which those words are used in the Constitution, upon any other body than the Courts mentioned and provided for in Section I, Article V, of the Constitution, which provides that "the judicial power of this State shall be vested in" the Courts therein specifically mentioned and provided for. The few instances in which judicial power is vested elsewhere are provided for in the Constitution itself, and with these few exceptions, the whole of the element of sovereignty known as judicial power was vested by the people in their Courts, and none of it was left to be lodged elsewhere.   In fact, every person exercising the functions of

either of the other departments of the government are for-
bidden to assume or discharge those vested in the Courts.
We have already seen that the Dispensary Commission is
not a Court within the meaning of the judicial article of
the Constitution, but is a special tribunal, created under the
power of the Legislature to investigate the financial affairs
of the State, and that provision of the Constitution which
authorizes the Legislature to direct by law how claims
against the State shall be established and adjusted.

It follows that any attempt to confer upon the Commis-
sion judicial powers, except in so far as the exercise of such
powers may be necessarily incident to the duty of investi-
gating and ascertaining the truth with respect to the man-
agement of the dispensary, and the just liabilities of the
State growing out of dealings with the dispensary, is viola-
tive of the Constitution. The exercise of judicial functions,
or *quasi* judicial functions, is often necessary, as an inci-
dent, to the exercise of the powers conferred by the Con-
stitution upon the other co-ordinate branches of the govern-
ment, as in all cases where the exercise of judgment and
discretion are required. But this is not the judicial power
vested in the Courts. It would be difficult to give an exact
definition of the words "judicial power" as used in the Con-
stitution, which would be applicable to all cases which might
arise, and we shall not attempt it. The lines of demarca-
tion between the powers of the three departments of gov-
ernment are often shadowy and illusive; but in the main
they are clear, well defined and well understood.

The Constitution assumed the existence of an organized
society, and when it vested the judicial power in the Courts,
it had reference to the judicial power then existing, and
such as the people then understood to be vested in and exer-
cised by the Courts.

There can be no doubt or difficulty therefore as to those
powers, which, from the earliest periods in the history of
our constitutional forms of government, have been exer-

cised by the Courts in the due and orderly interpretation and administration of the law. It has always and universally been deemed the prerogative of the Courts to enforce and protect rights, prevent and redress wrongs, punish offenses against the public, and determine the rights, obligations and liabilities of persons arising out of their relations to and dealings with each other. It would not be contended for a moment that the Legislature could, even upon the fullest, fairest and most deliberate investigation, after due notice, pass a valid act declaring that a particular individual is indebted to the State in a given amount, and by legislative fiat create a lien upon his property. Such an act would not only be an unwarranted usurpation of judicial power, but would also be an infringement of the constitutional guaranty that no person shall be deprived of his property without due process of law or be denied the equal protection of the law. If, then, the Legislature itself could not pass such a judgment, it cannot confer upon a commission the power to do so. The creature cannot be greater than the creator. The investigation of the dealings between the plaintiff and the State, the hearing of evidence and argument upon the facts and the law applicable thereto, and the determination of the rights of the plaintiff and the State growing thereout are so clearly an exercise of judicial power that the bare statement of the proposition is sufficient without argument to illustrate its truth. It was held to be such by this Court in *State* v. *Dispensary Commission, supra,* where, at page 333, the Court said: "Their (the Commission's) discretion is a judicial discretion, and their action, without respect to the validity of claims, judicial action." So long, therefore, as the action of the Commission was confined to the investigation of all dealings, past and present, with the dispensary, and the determination of the just liabilities of the State growing out of them, it was, as we have seen, based upon constitutional authority, and was valid and binding. But we find no authority in the Constitution for the Legislature

to provide by law how claims of the State against others shall be established or adjusted, except through the Courts. We conclude, therefore, that in so far as the act of 1910 attempts to confer upon the Commission power to pass final judgment upon the claim of the State against the plaintiff, it is unconstitutional, null and void. And, as the lien which the act attempts to create is based upon the unauthorized act of the Commission, it is likewise null and void.

The judgment of this Court is that the decision of the Commission upon plaintiff's claim against the State be affirmed, and that the defendants be enjoined from asserting or claiming any lien upon plaintiff's property under or by virtue of the notice filed in the office of the clerk of Court for Richland county, and that said notice be cancelled of record.

November 29, 1910. PER CURIAM. On consideration thereof, the within petition is dismissed.