CAROLINA GLASS CO. v. MURRAY et al.

(District Court, E. D. South Carolina.   June 19, 1912.)

1. MONEY RECEIVED (§ 13*)—RIGHT OF ACTION—INTEREST IN FUND.

Plaintiff cannot recover in an action for money received, unless it possesses some title to, interest in, or lien on the particular fund in the hands of the person against whom the action is brought.

[Ed. Note.—For other cases, see Money Received, Cent. Dig. § 40;  Dec. Dig. § 13.*]

2. STATES (§ 191*)—ACTION AGAINST STATE—RIGHT TO SUE—OWNERSHIP OF FUND.

Act S. C. Feb. 16, 1907 (25 St. at Large, p. 463), provided for the establishment of dispensaries, and section 6 declared that the members of the county dispensary board were county officers, and were authorized in the name of the state to buy in any market and retail within the state liquors and beverages as provided therein, "provided that the state should not be liable on any contract for the purchase thereof beyond the actual assets of the dispensary for which the purchase was made." Section 11 required each dispenser daily to deposit to the credit of the county board in a bank designated by it all moneys received by him for sales, which sales section 13 requires to be made for cash at a profit to be determined by the board, and section 18 provides for the distribution of profits quarterly for the benefit of various county purposes. *Held* that, where supplies were sold by complainant to a dispensary board, they were sold under the authority and in the name of the state to it as a purchaser, and that the receipts of the business did not constitute a trust fund for the payment of the dispensary debts of which the dispensers were the trustees, and hence the state was a necessary party to a suit by complainant for the purchase price of supplies so sold, which action could not be maintained where the state had not consented to allow itself to be sued.

[Ed. Note.—For other cases, see States, Cent. Dig. §§ 179–184;  Dec. Dig. § 191.*

What are suits against states within the meaning of constitutional amendment 11.   See note to Murray v. Wilson Distilling Co., 92 C. C. A. 25.]

At Law.   Action by the Carolina Glass Company against W. J. Murray and others.   Judgment for defendants.

Lyles & Lyles and D. W. Robinson, of Columbia, S. C., for plaintiff.

B. L. Abney, of Columbia, S. C., and W. F. Stevenson, of Cheraw, S. C., and J. Fraser Lyon, Atty. Gen., for defendants.

SMITH, District Judge. This is an action at law; but, the result depending upon questions of law, the parties to the cause have by written stipulation duly signed and filed waived a jury trial, and the question therefore comes before the court without a jury for trial and determination. The complaint is in the nature of an action against the individual defendants for moneys by them had and received, and which moneys they ought ex æquo et bono to refund to the plaintiff as its property. The defendants were at one time members of the state dispensary commission, appointed under the act approved February 16, 1907 (25 Stats. S. C. p. 835), and as such received a sum of money under the following circumstances, as appears by the testimony in the cause, viz.:

By an act approved February 16, 1907 (25 Stats. S. C. p. 463) the General Assembly of South Carolina enacted that, wherever at the election in the act provided for any county voted in favor of the sale of alcoholic liquors and beverages, it should be lawful that the same should be sold in such county, and that thereupon a board should be appointed to be known as the "County Dispensary Board," who were authorized and required to establish dispensaries in the county for the sale of alcoholic liquors and beverages under the forms and limitations prescribed in the act. The act also provided:

"Sec. 6. The members of the said county dispensary board are hereby declared to be county officers and are hereby authorized and empowered under the authority and in the name of this state, to buy in any market and retail within the state, liquors and beverages as provided herein: Provided that the state shall not be liable upon any contract for the purchase thereof beyond the actual assets of the dispensary for which the purchase is made."

"Sec. 11. Each dispenser shall daily deposit to the credit of the county board, in a bank designated by the board, all moneys received by him from sales."

"Sec. 13. All sales shall be for cash and at a profit to be determined by the board."

By section 18 it is provided that the county dispensary board should quarterly in each year make a sworn statement of the profits, and at the same time divide and pay out the profits as so ascertained in the proportion fixed by the act to various public county purposes. The act appointing a state dispensary commission, although a separate act, was approved on the same day as this last-mentioned act providing for county dispensary boards, viz., February 16, 1907. Under the act of February 16, 1907, creating the state dispensary commission, the commission so created was directed to close out the entire business of the state dispensary as carried on by the state prior to February 16, 1907, collect all debts due, and pay all just liabilities of the state growing out of the said business. The commission was given full power and authority to investigate the past conduct of the affairs of the dispensary. This act of 1907 was amended in 1908 so as to give the commission full power to pass upon, fix, and determine all claims against the state growing out of dealings with the dispensary; and to pay for the state any and all just claims which have been submitted to and determined by it and no other. 25 Stats. S. C. p. 1293, § 11.

The plaintiff in this case had furnished the state with bottles and demijohns used in the business of the state dispensary as carried on prior to February 16, 1907, and had a claim therefor against the state for $23,013.75. This claim the plaintiff presented to the state dispensary commission, who, after investigation, found that, in pursuance of a conspiracy between some of the directors of the state dispensary and some of the plaintiff's officers or agents to defraud the state, the latter had paid the plaintiff on glassware purchased between 1902 and April, 1906, a price exceeding the fair market value thereof by $51,432.94. Therefore, allowing plaintiff's claim of $23,013.75, the commission found that plaintiff was indebted to the state in the sum of $28,419.24, the difference between the amount of its claims and the sum it had fraudulently collected from the state prior to April, 1906. From this decision of the commission an appeal was taken under the provisions of the act of 1907 to the Supreme Court of South Carolina. This appeal was heard by that court, which on November 17, 1910, rendered its decision affirming the decision of the commission so far as that decision held that the plaintiff had no claim against the state. That court held further:

"The findings of the commission, however, are controlling only in its determination of the nonliability of the state upon appellant's claim. They have not the force or effect of a judgment, concluding appellant in any other proceeding, such, for instance, as the state might institute in the proper court to recover the amount found by the commission to be due it by appellant."

And again:

"So long, therefore, as the action of the commission was confined to the investigation of all dealings, past and present, with the dispensary, and the determination of the just liabilities of the state growing out of them, it was, as we have seen, based upon constitutional authority, and was valid and binding. But we find no authority in the Constitution for the Legislature to provide by law how claims of the state against others shall be established or adjusted except through the courts. We conclude, therefore, that, in so far as the act of 1910 attempts to confer upon the commission power to pass final judgment upon the claim of the state against the plaintiff, it is unconstitutional, null, and void." Carolina Glass Co. v. State of S. C., 87 S. C. 270, 69 S. E. 391.

In the meantime, and after the creation of the county dispensary board under the act of February 16, 1907, the plaintiff from time to time furnished the county dispensary board for Richland county glassware under purchases made from it by that board, and on February 23, 1910, there was admittedly due to the plaintiff for these purchases the sum of $4,963.13. On the 23d of February, 1910 (26 Stats. S. C. p. 876), by an act of the General Assembly of South Carolina approved that day, it was provided:

"Sec. 6. In any and all cases where the state dispensary commission has heretofore found any amount due the state by any person, firm or corporation on account of dealings with the state dispensary, the several county dispensary boards now existing, and all boards and other officer or officers in charge of any money due any such person, firm or corporation on account of any dealings with any and all county dispensaries heretofore existing, shall, upon demand, pay to the state dispensary commission a sufficient amount, or so much thereof as may be on hand, to cover the amount so found to be due the state."

Subsequent to February 23, 1910, and between that date and December 13, 1910, the plaintiff delivered to the county dispensary board for Richland county additional supplies of glassware for which there was admittedly due to plaintiff $12,586.64, which, added to the $4,-963.13 due on the 23d of February, 1910, made a total of $17,550.07 admittedly due to plaintiff on December 13, 1910. On that day, viz., December 13, 1910, the county dispensary board for Richland county paid the sum of $17,550.07 to the state dispensary commission under the circumstances stated in the receipt given for the same, viz.:

"Columbia, S. C., December 13, 1910.

"Received from the Richland county dispensary board the sum of seventeen thousand five hundred & fifty $07/100$ dollars ($17,550.07), being the amount in the hands of the Richland county dispensary board to the credit of the Carolina Glass Company for goods and merchandise bought by the Richland county dispensary board from the Carolina Glass Company, which amount is paid to the state dispensary commission upon its demand made in pursuance of the provisions of the act of the General Assembly entitled 'An act to further provide for winding up the affairs of the state dispensary' approved 23 day of February, 1910; and in pursuance of the judgment of the Supreme Court in the case of the Carolina Glass Company vs. Dr. W. J. Murray et al.

"State Dispensary Commission, by W. J. Murray, Chairman.
"$17,550.07."

On November 22, 1910 (after the filing of the opinion of the Supreme Court of South Carolina in Glass Co. v. State of S. C.), the plaintiff in this case gave the defendants personal notice that they would be held personally liable for any funds due to plaintiff by any county dispensary board which the defendants should hold, and not pay over to the plaintiff. On receiving this amount of $17,550.07, the defendants held it until March 27, 1911, when they turned it over to the persons who had been appointed as members of the state dispensary commission in succession to the present defendants who had ceased to be such.

The contention of plaintiff is that this amount of $17,550.07 was a fund to which plaintiff is and was entitled, that it came into the hands of the defendants on December 13, 1910, under circumstances which fully notified the defendants that ex æquo et bono they were bound to pay it to plaintiff, and that the action of defendants in turning it over on March 27, 1911, to their successors in office was tortious and unlawful after the notice of November 22, 1910, and leaves defendants personally responsible for the amount.

The jurisdiction of this court is invoked on the ground that the act of February 23, 1910 (St. at Large [S. C.] p. 876), is in contravention of section 10, art. 1, of the United States Constitution, as impairing the obligation of the contract, whereby, under the act of February 16, 1907, the county dispensary board was bound to pay to plaintiff the amount admittedly due for the glassware furnished by it, and is further in contravention of the fourteenth amendment to the United States Constitution, in that it seeks without due process of law to take the amount of $17,550.07 admittedly due to plaintiff and arbitrarily apply it to the payment of a contested claim made by the state, not yet judicially established, for $28,419.24 against

the plaintiff. The defendants object to the jurisdiction of this court on the ground that this action is in effect an action against the state, or to which the state is a necessary party, and pleaded in bar to the merits that the cause of action set up in the complaint is res adjudicata, having been already adjudicated by the state courts in the cause of Carolina Glass Co. v. State of S. C., the decision of the court in which case is reported in 87 S. C. 270, 69 S. E. 391.

On this last question the judgment of this court is that the matter is not res adjudicata. By the express terms of the decision referred to the merits of the contention of plaintiff in any affirmative proceeding in any court of competent jurisdiction for a recovery is not passed upon or adjudged. Neither the parties nor the controversy in the case before this court are the same with those in the case before the state dispensary commission and the state Supreme Court. If the facts were as they are presupposed to be by the plaintiff in its pleading, this court would find no difficulty in holding as a conclusion of law that so much of the act of February 23, 1910, as may seek by force of the act itself to divest the plaintiff summarily of any vested right or title acquired by virtue of the act of February 16, 1907, or as may seek to take summarily any property belonging to plaintiff and apply it to the state's use, is null and void. In other words, if the said amount of $17,550.07 was a fund belonging to the plaintiff, was its property, to which it had title, then the act of February 23, 1910, in so far as it attempted to summarily take that fund and give it to the state without proper judicial process, was and is null and void under the provisions of the United States Constitution above mentioned. If, however, the said amount of $17,550.07 was not a fund to which the plaintiff had such title as to be able to recover it in the proceedings now before this court, but, if it was and is the property of the state of South Carolina, then the statute would not be subject to the prohibitive clauses of the United States Constitution. Without discussing the principles which govern the right of action in a case for money had and received to the use of another, it is enough to say that in all such cases the plaintiff must establish his title to the particular fund in question as distinguished from a mere claim as a creditor of the person to whom the fund belongs. To illustrate: If A. is a creditor of B., and C. has in his possession funds of B., that would not justify an action by A. against C. for money had and received. A. would have the right only to bring an action against B. to recover his debt, and as an incident to that action (if the other circumstances permitted) attach the funds in the hands of C. to answer to the judgment when established. B., however, would be a necessary party to this action. But, if B. had made an assignment to A. of the particular funds in the hands of C., whether before or after it reached his hands, an action for money had and received would lie directly against C.

It is thus evident that upon the question of the plaintiff's title to, interest in, or lien upon the particular fund received by the defendants all other questions in this cause depend.

[1] (1) The plaintiff cannot recover in an action for money had

and received unless it possesses some title to, interest in, or lien upon the particular fund in the hands of the third party against whom the action is brought.

(2) Unless the plaintiff under the act of 1907 or otherwise had such an interest in, lien upon, or title to the specific fund of $17,-550.07 as to give it a definite vested right to it, then section 6 of the act of 1910 could not operate to divest any such right in contravention of the clauses of the United States Constitution set up in the complaint.

(3) If this fund of $17,550.07 belonged to the state of South Carolina, and the plaintiff was only a creditor of the state of South Carolina and possessed no interest in, lien upon, or title to this specific fund, then the state of South Carolina would be a necessary party to any judicial proceedings attempting to establish a judgment against the state, and by virtue of such judgment when established to subject this fund as the property of the state to the payment of such judgment.

Under the second of these questions, a different controversy exists with regard to the $4,963.13 due on the 23d of February, 1910, than with regard to the $12,586.64, which became due for articles furnished subsequent to that date, and furnished, therefore, with full knowledge and notice of the act of February 23, 1910, now complained of as contravening the prohibitive clauses of the United States Constitution. That statute could only contravene those provisions as to contracts made and rights existing prior to its passage. The contracts for the sale of the articles represented in the claim for $12,-586.64 having been entered into and all rights thereunder having accrued subsequent to the passage of the act could not have been by it divested or impaired or taken without due process of law. As, however, if the plaintiff is not entitled to maintain this action for the $4,963.13, a fortiori it must fail as to the $12,586.64, it will not be necessary to discuss them separately in this opinion.

[2] To whom did the fund of $17,550.07 belong both before and after it reached the hands of defendants? Under section 6 of the act of 1907 county dispensary boards are "authorized and empowered under the authority, and in the name of this state to buy in any market and retail within the state liquors and beverages as provided herein." If this was all, there would be no doubt that the county dispensary board was simply the agent of the state to do as commanded. If the liquors and beverages were purchased under the authority and in the name of the state, then the state was the purchaser and the owner of the articles when purchased. Necessarily it follows from this that, if the state was the purchaser, the state was the party liable on the contract to the vendor for the purchase price. Necessarily it also follows that, if the state was the purchaser and the owner of the articles when purchased, it was also the owner of the proceeds of the same articles when sold by its direction. It is true that in the first two lines of this section the members of the county dispensary board are declared to be "county officers." There is no reason, however, why the state should not operate, if it sees

fit, through or by means of local county officers who owe the existence of their office to a state statute, as well as by means of general state officers. It might be a question if the officers chose to make it, whether as a county officer the performance of a general state duty could be devolved upon him, but, if the act performed was one in the name and under the authority of the state, the state would still be the responsible party, notwithstanding it might have been performed by an officer who could not have been compelled to perform it.

So the proviso following the clause above quoted is:

"That the state shall not be. liable upon any contract for the purchase thereof beyond the actual assets of the dispensary for which the purchase is made."

The very language of this clause would show that it was intended that the state should be liable upon any contract up to the extent of the actual assets of the county dispensary for which the purchase was made. If the state was liable, then it meant that the state was vendee, and as such the owner of the property purchased. That the liability of the state was limited would not appear to affect this logical sequence. That limitation would appear simply to be notice to any one selling to the county dispensary board on the credit of the state that it must be careful not to sell to that particular county dispensary board any articles which exceeded in the cost price the actual assets in the hands of that particular county dispensary board. It would not, however, affect the express provision that, if it did sell, it sold to them under the authority and in the name of the state; in other words, sold to the state the articles sold. This inference is corroborated by the provisions of section 18, providing for the division of the profits in each county of the business of the sale of alcoholic liquors and beverages, as carried on under the statute by the county dispensary board. Those profits are arbitrarily divided differently in different counties. In some one-third goes to the municipality in which the dispensary may be located; in another one-half goes to such municipality; in some counties one-third goes to the county school fund; in other counties only one-fifth goes to that fund. This evidences that the state retained to herself the entire control of the profits to be distributed as it saw fit, as its own money and with the power at any time by statute to repeal any existing mandate for the division of these profits, and make another and wholly different distribution.

It is claimed that, inasmuch as the statute only undertakes to deal directly with the distribution of the profits of the business, the inference is that the balance was devoted by the state to the payment of the expenses of that business and incidentally as part of those expenses to the payment of the persons from whom the articles necessary for the business were purchased. It is contended that this constitutes such balance a sort of trust fund to be held by the county dispensary board for those specific parties, thus constituting the persons who might be the holders of that indebtedness; which must be deducted before the profits are ascertained, beneficiaries directly interested in this fund as a trust fund. This result would be a very strained in-

ference under the circumstances. The direction that the profits must be ascertained and distributed may be a direction by the state to its agents to pay the expenses of the business before ascertaining and distributing the profits, but it is no more a segregation to the creditors individually of any part of the funds to pay the expenses than is the act of any prudent business man who pays the expenses of his business before he spends his profits. The state could at any time interfere and direct that these expenses should not be paid until vouched or audited as the state saw fit, or, in fact, it might expressly prohibit their payment until directed by an act of the Legislature, or, if it chose to go to that length, might wholly forbid the payment. The method adopted by the state for the payment of the expenses of the business authorized by it in no sense can be fairly construed as constituting the proceeds of the state's own property which could be used by it for the payment of those or any other expenses, a trust fund to which the parties to whom the expenses should be paid are entitled to look to as a specific fund assigned to them of which they are the beneficiaries.

The provisions of sections 11 and 13 of the act of 1907 lend no additional strength to the argument in favor of the inference sought to be drawn by the plaintiff. Those sections prescribe the methods to be followed by the state's agents in the conduct of the state's business so as to secure its efficient and safe performance. In considering this very section 6 of the act of 1907, the Supreme Court of South Carolina held that the county dispensaries were conducted under the authority and in the name of the state. "Therefore the officers in charge of them are agents of the state, and the funds arising from the sale of liquors through them are the funds of the state, and the debts due for goods sold them are the debts of the state." Glass Co. v. State, 87 S. C. 288, 69 S. E. 398. In the same case the state court affirmed the conclusion of that court in the case of State v. Dispensary Commission, 79 S. C. 325, 60 S. E. 931, viz.:

"The General Assembly may require the public funds or any part of them to be put in any place or with any person it sees fit; and there is no limit to its power in imposing conditions and conferring discretion on its fiscal agent for the disbursements of these funds to its creditors."

In the same case (State v. The Dispensary Commission, 79 S. C. 326[1]) the Supreme Court quoted and followed the Supreme Court of the United States in the case of Buchanan v. Alexander, 4 Howard, 20, to the effect that:

"So long as money remains in the hands of a disbursing officer, it is as much the money of the United States as if it had not been drawn from the treasury."

Under the construction of the statute of 1907, as decided in the case of Glass Co. v. State, 87 S. C. 270, 69 S. E. 391, and the principle decided in State v. Dispensary Commission, 79 S. C. 316, 60 S. E. 928, the Supreme Court of the state of South Carolina has decided that the proceeds of the articles purchased by the county dispensary board under the authority given in the act of 1907 was the property of the state. That being the case, it follows that it is not the property of

[1] 60 S. E. 932.

the plaintiff in this case, and plaintiff has no enforceable interest in it, and that this action is an attempt on the part of the plaintiff to subject this fund which is the property of the state to the payment of the claim it holds against the state. To that proceeding the state is a necessary party. Inasmuch as the state has not consented to allow itself to be sued, this court has no jurisdiction of any action against it, and can have no jurisdiction of the action of the plaintiff in this case against the state. In the case of Murray v. Wilson Distilling Co., 213 U. S. 151, 29 Sup. Ct. 458, 53 L. Ed. 742, the Supreme Court of the United States decided that it was apparent that the purchases which were made by the state's officers or agents of liquors for the consumption of South Carolina under the dispensary acts prior to the act of 1907 were purchases made by the state for its account, and therefore that the relation of debtor and creditor arose from such transactions between the state and the persons who sold the liquor. It further held that the proceeds of such liquors when sold by the state's officers or agents belonged to the state, and that suits by the vendors against the parties in whose hands those state funds were, so as to compel the application to the debts claimed by the vendors, of the proceeds of the liquors in the hands of such parties, were, in effect, suits against the state, and that as such came within the express prohibition of the eleventh amendment of the Constitution of the United States, and that this court could have no jurisdiction of them. The Supreme Court of the United States held, further, in the same case, that by engaging in a business the state does not thereby lose the exemption from suit given to it under the eleventh amendment to the United States Constitution. It follows that upon the facts found in this case under the principles adjudged by the Supreme Court of South Carolina in the two cases cited, and by the Supreme Court of the United States in Murray v. Wilson Distilling Co., supra, that this court has no jurisdiction of this cause as being in effect a suit against the state or one to which the state is a necessary party, and that the demurrer interposed by the defendants to the jurisdiction of the court must be sustained. Although it would appear to follow also from the principles adjudicated in the decisions referred to that the plaintiff had no such interest in the fund received by the defendants as would entitle it to recover in this action against the defendants individually as for money had and received, and that having no such interest section 6 of the act of 1910 divested no right of nor impaired any contract held by the plaintiff so as to contravene the provisions of the United States Constitution, yet, as the court finds that for the reasons stated it has no jurisdiction of the cause as being one in effect against the state, this adjudication is limited to one of dismissal on that ground, and a formal judgment to that effect will be entered.